**Carl Ray SONGER, Petitioner,**

v.

**Louie L. WAINWRIGHT, Secretary, Department of Corrections, State of Florida, and Richard L. Dugger, Superintendent, Florida State Prison, Starke, Florida, Respondents.**

No. 82–230–Civ–Oc–M.

United States District Court,
M.D. Florida,
Ocala Division.

July 14, 1983.

Joseph Jordon, West Palm Beach, Fla., for petitioner.

Frank Lester Adams, III, Asst. Atty. Gen., Tampa, Fla., for respondents.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

MELTON, District Judge.

This cause came before the Court on a petition for writ of habeas corpus, filed on

December 1, 1982, by CARL RAY SON-
GER, a death-row inmate at Florida State
Prison. Respondents filed their response to
the petition on December 21, 1982, and an
evidentiary hearing on this matter was con-
ducted on February 10, 1983. After careful
and extensive review of the entire record
herein, and after hearing argument by
counsel for the respective parties, the Court
is of the opinion that the petition for writ
of habeas corpus should be denied.

## PROCEDURAL HISTORY

Like so many death-row inmates, peti-
tioner has become intimately familiar with
the appellate process—at both the state and
federal levels. The procedural history of
this case is quite long, spanning over nine
years. On December 23, 1973, petitioner
was charged with the first-degree murder
of Highway Patrolman Ronald Smith on a
rural road in Citrus County, Florida. The
trial was transferred to Osceola County,
Florida, and petitioner was convicted of
first-degree murder on February 27, 1974.
The jury recommended the imposition of
the death sentence, and the trial judge im-
posed such sentence on February 28, 1974.
The Supreme Court of Florida affirmed pe-
titioner's judgment and sentence in *Songer
v. State,* 322 So.2d 481 (Fla.1975) ("*Songer
I*"). The Supreme Court of the United
States, however, in *Songer v. Florida,* 430
U.S. 952, 97 S.Ct. 1594, 51 L.Ed.2d 801
(1977), vacated the sentence and remanded
for reconsideration in light of the ruling in
*Gardner v. Florida,* 430 U.S. 349, 97 S.Ct.
1197, 51 L.Ed.2d 393 (1977). On remand for
resentencing, the trial judge reimposed the
death sentence on August 17, 1977. The
Supreme Court of Florida again affirmed
the sentence of death in *Songer v. State,*
365 So.2d 696 (Fla.1978) ("*Songer II*"), and
the United States Supreme Court denied
certiorari in *Songer v. Florida,* 441 U.S. 956,
99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979).

In September 1980, the Governor of Flor-
ida signed a death warrant ordering peti-
tioner's execution during the week of Octo-
ber 3, 1980. Pursuant to Rule 3.850, Fla.R.
Crim.P., petitioner filed a Motion to Vacate

Judgment and Death Sentence on Septem-
ber 24, 1980. On September 30, 1980, the
trial judge denied petitioner's Rule 3.850
motion. Petitioner's execution, however,
was stayed by the Florida Supreme Court
on September 26, 1980, upon the filing by
petitioner and 122 other death-row inmates
of an application for extraordinary relief
and petition for writ of habeas corpus,
which was subsequently denied in *Brown v.
Wainwright,* 392 So.2d 1327 (Fla.), *cert. de-
nied,* 454 U.S. 1000, 102 S.Ct. 542, 70
L.Ed.2d 407 (1981).

The trial court's denial of petitioner's
Rule 3.850 motion was affirmed by the Su-
preme Court of Florida on September 9,
1982. *Songer v. State,* 419 So.2d 1044 (Fla.
1982) ("*Songer III*"). On November 5, 1982,
the Governor of Florida signed a second
death warrant and petitioner's execution
was scheduled for December 7, 1982. On
November 22, 1982, petitioner filed in the
Florida Supreme Court a petition for writ
of habeas corpus, which was denied in *Son-
ger v. Wainwright,* 423 So.2d 355 (Fla.1982)
("*Songer IV*").

On December 1, 1982, petitioner filed in
this Court his petition for writ of habeas
corpus and an application for stay of execu-
tion. On December 3, 1982, this Court was
compelled to grant a stay of execution pur-
suant to the mandate of the United States
Court of Appeals for the Eleventh Circuit
("Eleventh Circuit") in *Goode v. Wain-
wright,* 670 F.2d 941 (11th Cir.1982) (error
for district court to deny a stay of execu-
tion when a constitutional issue raised by
petitioner is being considered by a federal
appellate court). Because the issue under-
lying the order of stay has been resolved by
the Eleventh Circuit, *see Ford v. Strickland,*
696 F.2d 804 (11th Cir.1983) (en banc) (Flor-
ida Supreme Court did not improperly use
nonrecord material in appellate review of
death-row inmates' cases), the Court will
now dissolve its stay entered on December
3, 1982, and proceed to review all of the
grounds alleged by petitioner for habeas
corpus relief.

## GROUNDS FOR RELIEF

### I. *Ineffective Assistance of Trial Counsel at Guilt/Innocence Stage.*

Petitioner's first ground for habeas corpus relief is his claim that he was denied his right to effective assistance of counsel at the guilt/innocence stage of his capital trial in violation of the sixth and fourteenth amendments to the United States Constitution. Petitioner presented this issue before the state trial court in his motion filed pursuant to Rule 3.850, Fla.R.Crim.P. ("3.850 Hearing"). The trial court denied petitioner relief, and the Supreme Court of Florida affirmed the trial court's decision. *Songer III*. Because petitioner has exhausted his state court remedies, this issue is properly before the Court for resolution.

Under the sixth amendment, a criminal defendant is entitled to an attorney reasonably likely to render and rendering reasonably effective assistance given the totality of the circumstances. *Washington v. Strickland*, 693 F.2d 1243, 1250 (5th Cir.1982) (Unit B en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983); *Herring v. Estelle,* 491 F.2d 125, 127 (5th Cir.1974). This standard does not guarantee errorless counsel, "nor may counsel's performance be judged by benefit of hindsight." *Proffitt v. Wainwright,* 685 F.2d 1227, 1247 (11th Cir.1982). In order to prevail on a claim of ineffective assistance of counsel, petitioner must prove his entitlement to relief by a preponderance of the evidence. *Washington,* 693 F.2d at 1250; *United States v. Killian,* 639 F.2d 206, 210 (5th Cir.), *cert. denied,* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981).

In support of his claim of ineffective assistance of counsel, petitioner outlines several alleged deficiencies of his trial counsel's performance at the guilt/innocence stage of his trial. The Court, after careful consideration of the record herein, cannot accept petitioner's conclusion that he was denied his right to effective assistance of counsel at the guilt/innocence stage of his trial.

First, petitioner contends that trial counsel, C. John Coniglio ("Coniglio"), failed to prepare adequately for trial. The general principles governing any claim of ineffective assistance of counsel based on inadequate pretrial investigation were enunciated in *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (Unit B en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). Recognizing that *Washington* provides the framework for analysis of this claim, petitioner argues that the case *sub judice* is a "category I type case" under *Washington.* Evidentiary Hearing of February 10, 1983 ("EH"), at 110–13. Petitioner contends that there was only one plausible line of defense available to him at his trial: self-defense. *See* Petitioner's Proposed Findings of Facts and Conclusions of Law at 12; EH at 110–11. Petitioner argues that had Coniglio only investigated petitioner's allegedly long-term use of certain drugs, and the behavioral and psychological effects such drugs allegedly had upon petitioner, Coniglio could have formulated and presented to the jury a credible self-defense theory. Petitioner contends that under such a self-defense theory, Coniglio could have presented evidence of drug usage to support the argument that petitioner, whose perceptions were affected by long-term drug usage, had reasonable grounds to believe that he was threatened with imminent danger of grievous bodily harm when the deceased Highway Patrolman drew his pistol. The Court rejects petitioner's conclusion that Coniglio was ineffective for his failure to investigate this potential line of defense, as petitioner begins his argument with a faulty premise. Petitioner would lead this Court to believe that there was only one plausible line of defense available, and therefore, Coniglio had a duty to make a reasonably substantial investigation into that one line of defense before proceeding to trial. *Washington v. Strickland,* 693 F.2d at 1252–53 (counsel must conduct substantial investigation into the one plausible line of defense in the case). The Court in *Washington,* however, recognized that trial counsel in many cases may have more than one plausible line of defense from which to choose. *Id.* at 1253–

58. The Court is of the opinion that the case *sub judice* is one of such cases.[1]

This case falls within that line of cases, designated as a type-IV case in *Washington,* where counsel "fails to conduct a substantial investigation into one plausible line of defense because of his reasonable strategic choice to rely upon another plausible line of defense at trial." *Id.* at 1254–56. In rejecting self-defense or voluntary drug intoxication as theories of his defense, Coniglio made the strategic decision to pursue the line of defense of attacking the sufficiency of the circumstantial evidence presented by the State to prove premeditation.

■■■■ The fact that Coniglio did not conduct a substantial investigation into any line of defense other than the one that he presented at trial does not mean that Coniglio failed to render reasonably effective assistance of counsel.[2] *Id.* at 1254–58. The law is clear that "counsel need not investigate lines of defenses that he has chosen not to employ at trial," provided counsel's strategy is: (1) based on reasonable assumptions given the totality of the circumstances, and (2) represents a reasonable choice based upon those assumptions. *Id.* at 1255. The Court is convinced that Coniglio's strategic decision to pursue the line

of defense that he did at trial was a reasonable choice based on reasonable assumptions.

It is incumbent upon a district court to determine, as a question of fact, whether trial counsel's strategic choice based upon a set of assumptions is reasonable. *Id.* at 1256 n. 23. The Court in *Washington,* in order to provide district courts with guidance in making this reasonableness determination, outlined a few of the factors that should be examined, none of which is individually determinative. *Id.* One factor a Court should consider is counsel's trial experience. In this regard, the Court notes that Coniglio had been practicing law for seventeen years and had been handling 200 to 300 criminal cases per year, 75% of which involved felony offenses. Moreover, Coniglio had previously represented several defendants charged with first-degree murder. 3.850 Hearing at 67, 91. With this extensive criminal experience, it is reasonable to conclude that Coniglio had formed "a more accurate picture of which lines of defense ... [were] most likely to succeed." *Washington,* 693 F.2d at 1256 n. 23.

A second factor a court should consider is whether the line of defense actually pursued by trial counsel was inconsistent with the line of defense that was rejected. *Id.*

1. There could conceivably have been three plausible lines of defense available to Coniglio in defending petitioner against a first-degree murder charge in this case: (1) self-defense (in conjunction with the presentation of evidence of the effects of long-term drug usage); (2) insufficiency of evidence to prove premeditation; and (3) voluntary drug intoxication. Unlike self-defense, which would have made the homicide justifiable, *see State v. Frazier,* 407 So.2d 1087, 1089 (Fla.App.1982), the defense of voluntary intoxication would only operate to mitigate the degree of the unlawful homicide. *Coggins v. State,* 101 So.2d 400, 402 (Fla.App. 1958) (intoxication may eliminate premeditation which is necessary element of first-degree murder); *see Russell v. State,* 373 So.2d 97, 98 (Fla.App.1979) (voluntary intoxication is defense to specific intent crimes). It is highly doubtful, however, whether the defense of voluntary drug intoxication would have been a successful line of defense, as petitioner had not ingested any drugs (other than marijuana the night before the shooting) since leaving Oklahoma approximately three days before the

shooting incident. Rule 3.850 Hearing Transcript ("3.850 Hearing") at 41–42, 57–58; Trial Transcript ("TT") at 348–49. In any event, whether there were two or three plausible lines of defense available is of little moment; the important point is that there was more than one plausible line of defense available, thereby affording trial counsel an opportunity to make a strategic choice based upon his "professional assumptions regarding the prospects for success offered by the various lines." *Washington v. Strickland,* 693 F.2d at 1255.

2. The court in *Washington* noted that when there is more than one plausible line of defense available, trial counsel should "ideally perform a substantial investigation into each line before making a strategic decision as to which lines he will employ at trial. The ideal, ... is an aspiration to which all defense counsel should strive. *It does not, however, represent the constitutional minimum for reasonably effective assistance of counsel." Id.* at 1254 (emphasis added).

Petitioner insists that the theory of self-defense should have been pursued by Coniglio. Coniglio, however, chose instead to rely upon the defense strategy of attacking the state's attempt to prove premeditation through the use of circumstantial evidence, which Coniglio contended was woefully insufficient to prove premeditation beyond a reasonable doubt. Although there may be some doubt whether these two defenses are legally inconsistent, Coniglio could have reasonably determined that a jury would perceive the two defenses to be inconsistent. *See Gray v. Lucas,* 677 F.2d 1086, 1089, 1094 (5th Cir.1982).

Another relevant factor the Court should examine is the possible prejudice that might have foreseeably resulted from the available lines of defense. Under petitioner's proposed self-defense theory, it would have been necessary to adduce extensive testimony concerning petitioner's long-term drug usage and its potential disorienting effects. *See* EH at 111; 3.850 Hearing at 47. Coniglio, however, apparently believed that heavy reliance on extensive testimony concerning drugs could have evoked a significant amount of prejudice by the jury. *See* EH at 81. Thus, the possible prejudice resulting from the proposed self-defense theory was foreseeably more severe than that resulting from the defense Coniglio actually presented at trial (failure to prove premeditation).

Finally, the Court notes that Coniglio, by not presenting any witnesses other than petitioner in his case-in-chief, gained an important tactical advantage of both opening and closing final arguments to the jury. Coniglio would have forfeited this tactical advantage had he presented the proposed self-defense theory that petitioner now presses upon the Court. In light of the preceding factors, the Court is convinced that Coniglio made a reasonable choice based upon reasonable assumptions when he rejected the uninvestigated self-defense theory in favor of the defense he actually pursued at trial, which was an attack on the sufficiency of the evidence adduced to prove the element of premeditation.

The Court's finding that Coniglio's strategic choice was reasonable does not end the Court's inquiry. After deciding upon a particular line of defense, trial counsel is obligated to conduct a substantial investigation into that chosen line of defense, which should include "an independent examination of the facts, circumstances, pleadings and laws involved." *Washington,* 693 F.2d at 1253 (quoting *Rummel v. Estelle,* 590 F.2d 103, 104 (5th Cir.1979). The scope of such investigation must be "reasonable, though not necessarily exhaustive." *Id.*

■ In support of petitioner's argument that Coniglio failed to prepare adequately for trial, petitioner points out that Coniglio failed to take the deposition of any witness and also contends that he met with Coniglio on only three occasions prior to trial, which collectively lasted for no more than one hour. *See* 3.850 Hearing at 24. Contrary to petitioner's testimony, Coniglio testified at the 3.850 Hearing—and the trial court so found in its order denying the rule 3.850 motion—that petitioner consulted with Coniglio on many occasions prior to trial. *See id.* at 75. However, the number and length of conferences between client and attorney is not determinative of the question before the Court. *Easter v. Estelle,* 609 F.2d 756, 759 (5th Cir.1980) ("[B]revity of time spent in consultation, without more, does not establish that counsel was ineffective."). The focus of this Court's inquiry should be on whether Coniglio had "devoted sufficient time to insure an adequate defense and to become thoroughly familiar with the facts of the case and the law applicable to the case." *Id.* The record herein reflects that Coniglio was so prepared. Taking advantage of the prosecutor's "Open File" policy in this case, Coniglio received and reviewed copies of all the witnesses' statements, police and laboratory reports, and all the physical evidence in the prosecutor's possession or control. *See* 3.850 Hearing at 71–72, 75, 105–06. Moreover, Coniglio testified that he and petitioner discussed prior to trial all of the evidence the state would present against petitioner; Coniglio further testified that he was not surprised by any

evidence presented at trial. *Id.* at 71, 75. After carefully reviewing the trial transcript of this case, the Court is left with a firm conviction that Coniglio's performance was reasonably effective. Coniglio's cross-examination of the State's witnesses, his numerous evidentiary objections raised, and his legal arguments presented to the trial court amply demonstrate that Coniglio was well versed in both the factual and legal aspects of petitioner's case. Therefore, the Court finds that petitioner's claim of ineffective assistance of counsel for Coniglio's alleged failure to prepare adequately for trial is without merit.[3]

A second alleged deficiency in Coniglio's performance at trial, petitioner argues, was Coniglio's failure to object to the prosecutor's argument to the jury of certain matters allegedly not in evidence. Petitioner first contends that Coniglio should have objected to the prosecutor's reference to the bullet angles of entry into the deceased's body. Petitioner argues that this matter was never put into evidence. The Court disagrees with petitioner. The angles of entry by the bullets into the deceased's body was placed into evidence through the testimony of pathologist Dr. Shutze. TT at 316–18.[4] Moreover, in his closing argument, Coniglio referred to these bullet angles of entry and pointed out to the jury some apparent inaccuracies in the prosecutor's recollection of the substance of Dr. Shutze's testimony. *Id.* at 389, 405–06. Therefore, the Court finds that petitioner's argument that this particular matter was not in evidence is without merit.

Petitioner next contends that Coniglio failed to object to the prosecutor's alleged repeated references to petitioner by an alias name allegedly used by petitioner. The Court finds no merit in petitioner's argument. There were no repeated references to petitioner by the alleged alias name; furthermore, use of the alleged alias name, *i.e.,* Robert Berry, was fully explained by petitioner when he testified during cross-examination. TT at 360–61.

■ Petitioner also contends that Coniglio's failure to object to the prosecutor's comment to the jury concerning the victim's age (26) rendered Coniglio's assistance ineffective. While it may be true that the prosecutor's comment was improper, Coniglio's failure to object does not thereby translate into ineffective assistance of counsel. As discussed earlier, a criminal defendant is not constitutionally entitled to "errorless counsel," but rather is entitled to reasonably effective counsel. *Proffitt v. Wainwright,* 685 F.2d 1227, 1247 (11th Cir.1982). In light of this standard, petitioner's claim of ineffectiveness is without merit. A review of the record indicates that Coniglio voiced numerous objections throughout the trial, many of which were sustained, and in general presented a skillful and effective defense for petitioner. Petitioner has not only failed to show that Coniglio was ineffective but also has failed to show how this trial error caused actual and substantial disadvantage to his defense. *See Washington,* 693 F.2d at 1258–62.

■ Petitioner alleges Coniglio committed another trial error when Coniglio failed to object to the exclusion of venirewoman Lucy Milton. Petitioner claims that the exclusion of this venirewoman for cause was in violation of the mandate of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Petitioner's claim is without merit for two reasons. First, Coniglio may have made a tactical decision not to object to the exclusion of Ms. Milton because he did not want her on the jury for some reason other than the *Witherspoon* issue. Second, even if Coniglio had object-

---

**3.** Because petitioner has failed to show that Coniglio was ineffective, the Court need not reach the question of whether there was substantial prejudice. *Washington,* 693 F.2d at 1250.

**4.** During direct examination of Dr. Shutze, the prosecutor attempted to elicit from Dr. Shutze his opinion on the body positions of the deceased and petitioner at the time of the shooting, at which time Coniglio objected. The trial court, sustaining Coniglio's objection, restricted Dr. Shutze's testimony to only the bullet angles of entry into the body. TT at 317.

ed, his objection would not have been well taken. Under *Witherspoon,* and its progeny, a venireman can be struck for cause when he is "irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings." *Burns v. Estelle,* 592 F.2d 1297, 1299 (5th Cir.1979) (quoting *Witherspoon,* 391 U.S. at 522 n. 21, 88 S.Ct. at 1777 n. 21). The court in *Witherspoon* further explained that a venireman may be excluded if he makes it "unmistakably clear" that his attitude toward the death penalty would prevent him "from making an impartial decision as to the defendant's *guilt." Id.* (emphasis in original). A review of the voir dire examination of Ms. Milton indicates clearly that she could not return a verdict of guilty, either in this case or in any capital death case.[5] Consequently, the exclusion of Ms. Milton for cause was entirely proper. *See Williams v. Maggio,* 679 F.2d 381, 384–86 (5th Cir.1982).

█ Petitioner next contends, as a final deficiency in Coniglio's performance at the guilt/innocence stage of his trial, that Coniglio should have objected to the trial court's giving of an instruction on circumstantial evidence to the jury. Petitioner cites *Willcox v. State,* 258 So.2d 298 (Fla. App.1972), to support his claim that the instruction given was improper. The Court in *Willcox* was of the opinion that a portion of the circumstantial-evidence instruction, which was also given in the case *sub judice,*

may have been inaccurate. *Id.* at 300. The court in *Willcox,* however, nevertheless held that such inaccuracy was not reversible error and affirmed the trial court. *Id.* at 300–01. The full instruction on circumstantial evidence given in *Willcox* was essentially the same as that given in petitioner's case. *See id.* at 299–300; TT at 424–25. In holding that such an *arguably* improper portion of a circumstantial-evidence instruction was not reversible error, the court in *Willcox* stated: "[T]he material error found here, which was merely a portion of the circumstantial evidence instruction, which in turn was merely a portion of the full charge relating to the presumption of innocence and reasonable doubt, could not have misled the jury." *Id.* at 300–01. A review of the complete instructions given in petitioner's case leads this Court to a similar conclusion. Because petitioner has failed to show how this error caused his defense actual and substantial disadvantage, *see Washington,* 693 F.2d at 1258–62, the Court need not reach the question of whether Coniglio was ineffective for his failure to object to the giving of this instruction.

## II. *Ineffective Assistance of Trial Counsel at Penalty Stage.*

Petitioner argues that he was denied his right to the effective assistance of counsel at the penalty stage of his trial. Petitioner first attacks Coniglio's failure to properly develop mitigating circumstances. Petitioner asserts that had Coniglio spoken further with him, he would have been able to

---

**5.** The voir dire examination of venirewoman Lucy Milton by the prosecutor went as follows:

Q. Do you believe in capital punishment where the law so provides?

A. Yes.

Q. And, if after you have listened to all the evidence if you have an abiding conviction to a moral certainty that this defendant is guilty, would you have any hesitation about finding him guilty, even though it could mean death?

A. I don't like to say death.

Q. That is what the law is, and I'm trying to find out if you are qualified or not, would you or could you do that if the evidence shows he is guilty beyond and to the exclusion of a reasonable doubt?

A. No, sir, I don't think so.

Q. In other words, would it make any difference whether it is this case or any case?

A. No, sir, it wouldn't make any difference which case.

Q. You could not vote guilty if there were a chance that he could receive death from that verdict, is that right?

A. That's right, I'm just weak on things like that.

Q. Is this a religious belief, or is it a personal belief, or what?

A. It is just personal.

Q. Well, then, we are not talking about this case, if it were any case, you would have to tell me the same thing, is that right?

A. That's right.

TT at 23–25.

develop additional character testimony, including the testimony of petitioner's parents.

 When counsel's trial strategy does not include mitigating character evidence, counsel is not required to investigate such evidence. *See Washington v. Strickland,* 693 F.2d at 1251; *Stanley v. Zant,* 697 F.2d 955, 964 (11th Cir.1983). In *Stanley,* although the extent of counsel's inquiry concerning character witnesses was unclear, counsel did explore the possibilities with Stanley and Stanley's mother. Similarly, Coniglio discussed the possibility of such witnesses with petitioner. Petitioner's father, however, Mr. Ray Songer—one of the main character witnesses petitioner claims Coniglio should have called to testify—indicated that his testimony would have been "generally supportive" and would merely have revealed whether his son was a good or bad person. EH at 82–83. Thus, like *Stanley,* "an investigation into character evidence would have revealed nothing more than general affirmations from family members and friends that … [petitioner] had been, at a time remote from the events giving rise to the charge, a basically good and responsible child and young adult." *Id.* Coniglio cannot therefore be faulted for failing to introduce such testimony.

This Court agrees with the Eleventh Circuit's analysis in *Stanley* of the interplay between character evidence and petitioner's claim of ineffective assistance of counsel.

> We cannot say that this evidence would have had no impact on the jury, nor can we say that a tactical decision to use such evidence would have been unreasonable…. In the present case, counsel's failure to present character evidence at the mitigation phase did not deprive Stanley of his right to reasonable representation. Further, the record is silent as to counsel's perception of the strategic posture of the case. Neither party saw fit to call Stanley's trial counsel as a witness at the state habeas hearing. We thus do not know … why he elected not to pursue the character witness line of inquiry …. The absence of any evidence of counsel's strategy places this case in stark contrast to cases such as *Washington v. Strickland.* We decline to infer from such silence an absence of strategy ….

> ….

> Effective counsel in a given case may consider the introduction of character evidence … unlikely to make much difference…. His position in reaching these conclusions is strikingly more advantageous than that of a federal habeas court in speculating post hoc about his conclusions….

> ….

> Whatever his reason, or lack thereof, it was not presented to the habeas court. In such situations "[c]ourts presume, in accordance with the general presumption of attorney competence, that counsel's actions are strategic."

*Id.* at 969–70 (quoting in part *Washington v. Strickland,* 693 F.2d at 1257).

Like the factual setting in *Stanley,* although Coniglio discussed with petitioner the possibility of using particular character witnesses during the penalty phase, Coniglio rejected that idea. His motivation for rejecting that testimony is unclear. Petitioner testified that Coniglio believed that such witnesses would not aid petitioner's case. Assuming *arguendo* the truth of petitioner's statement, and assuming that it encompasses counsel's entire reason for not calling the character witnesses, Coniglio's conduct remains within *Washington's* standards for effective counsel. Effective counsel may reasonably believe that character witnesses will not make a difference in a particular case. *See id.* at 970. Petitioner's opinions concerning counsel's motivations, however, may be false, or only partially accurate. Because Coniglio's motivations do not appear from his testimony at the 3.850 Hearing, and because both parties released Coniglio from his subpoena immediately prior to his testifying at the evidentiary hearing, *see* EH at 72–73, this Court may also presume, in accordance with *Stanley* and *Washington,* that counsel's decision not

to call character witnesses was strategic. Moreover, this Court is also aware that [n]o panel of the eleventh or fifth circuits has to date found ineffective counsel predicated on failure to call character witnesses at the penalty stage of a capital case. In fact, the cases strongly suggest that such an ineffectiveness claim would be difficult to sustain even apart from the additional requisite showing of prejudice.

*Id.* at 964. This Court will not impose an absolute requirement that counsel must introduce character witnesses at the penalty phase.

Furthermore, at the time of petitioner's trial in 1974, it was by no means clear that a defense attorney should introduce mitigating character evidence during the penalty phase. "Florida's capital sentencing statute was barely a year old at the time of appellant's trial, and the only Florida Supreme Court case addressing its constitutionality supported an interpretation of the statute as limiting the mitigating evidence that could be considered to that falling within the seven statutory factors." *Proffitt v. Wainwright*, 685 F.2d 1227, 1247–48 (11th Cir.1982). Indeed, petitioner's trial counsel may have been acting under such an impression:

> Q: [W]hat sort of recollection do you have of discussing the sentencing procedure and the kind of evidence that Mr. Songer might present?
>
> A [Coniglio]: The only recollection I have that was a new statute at that time, I don't know when it was enacted, I believe maybe a year before the trial date, and going over the statutory grounds with him for aggravating circumstances and mitigating circumstances, and what would be available to us under the statutory language and what would be against us under the statutory language.

3.850 Hearing at 62. Thus, it is quite possible that Coniglio may have been laboring under the reasonable, but mistaken, belief that he could not introduce any nonstatutory mitigating factors. As a result, this Court is of the opinion that counsel's failure to introduce general character evidence did not deprive petitioner of effective assistance of counsel.

 Petitioner also argues that other "specific factors ... would have been available" to petitioner's counsel, "if he had performed adequately." These factors include petitioner's passive nature and the lack of prior violent crimes, his meager education and impoverished background, and testimony from a couple named Matthews who allegedly would have testified to petitioner's prior drug usage. First, Coniglio did elicit testimony from petitioner during the penalty phase that all of petitioner's previous crimes were nonviolent. *See* TT at 433. Second, petitioner has not developed evidence of an allegedly poor education or impoverished background. In addition, assuming such evidence existed, Coniglio may have failed to introduce such evidence for the reasons articulated above, for which he cannot be constitutionally faulted. Third, Coniglio indicated that he had deliberately abandoned the "drug defense," at both the guilt/innocence stage and the penalty phase. *See* 3.850 Hearing at 27, 81, 111; *see also* EH at 81. Consequently, there was no reason to have the Matthews testify about petitioner's drug usage.

Similarly, there was no need, as petitioner contends, to thoroughly inspect alleged drug-related items taken from petitioner's car for two reasons. First, because the state maintained an "open file" in this case, *see* 3.850 Hearing at 64, 105–06, Coniglio's failure to formally demand exculpatory evidence from the state would apparently have been a useless exercise. Second, even if such allegedly exculpatory evidence did exist, Coniglio's posttrial strategy did not include the use of such evidence. Petitioner's father testified that Coniglio's decision to forego testimony during the penalty phase concerning petitioner's drug use was strategic: "[Coniglio] said that if you mentioned dope down here they will hate it, and it is best not to bring it up." EH at 81. Indeed, petitioner's present counsel admitted that Coniglio, who had practiced primarily crimi-

nal law in the geographic area for seventeen (17) years, perceived a certain prejudice against drugs among the local community in which petitioner was tried. *See* EH at 111; *cf. Foster v. Strickland,* 707 F.2d 1339 at 1344–45 (11th Cir.1983) (counsel not ineffective when decision to present mitigating evidence in particular manner based upon years of criminal practice in particular region). The Florida Supreme Court agreed with Coniglio's analysis: "[A]ppellant's trial counsel avoided such testimony for tactical reasons, [and] obviously did not believe that a voluntary intoxication defense would be effective...." *Songer* III, 419 So.2d at 1047. This type of "historical factfinding" is entitled to a presumption of correctness under 28 U.S.C. § 2254(d) (1976), unless petitioner falls within one of that section's enumerated exceptions. *Thomas v. Zant,* 697 F.2d 977, 979–80 (11th Cir.1983).

 Hence, "counsel will not be regarded as constitutionally deficient merely because of tactical decisions. Even where an attorney's strategy may appear wrong in retrospect, a finding of constitutionally ineffective representation is not automatically mandated." *Ford v. Strickland,* 696 F.2d at 820 (citations omitted). Coniglio's decision not to put on any testimony concerning petitioner's drug usage was obviously strategic. Having practiced law in the area for seventeen (17) years, Coniglio could be expected to be familiar with local attitudes and prejudices. This Court, therefore, will thus not second-guess his decision. *Cf. Stanley v. Zant,* 697 F.2d at 969–70 (counsel's position in reaching certain strategic decisions more advantageous than federal court's post hoc speculation).

 Petitioner also complains that Coniglio failed to develop testimony concerning his age. Petitioner could not, however, have suffered any prejudice concerning this claim; the state elicited this testimony upon cross-examination. *See* TT at 435. Petitioner further alleges that Coniglio did not produce evidence demonstrating the insignificance of petitioner's prior convictions. This is not true. *See* TT at 433, 443–44.

Petitioner also states incorrectly that counsel failed to develop the passive nature of petitioner's escape from Oklahoma. During the penalty phase of the trial, the following exchange occurred between Coniglio and his client:

Q: When you left Oklahoma, you were on what they call a 'work release' program?

A: Yes, sir.

Q: They took you to work and picked you up from work?

A: Yes, sir.

Q: You didn't use any violence, you just walked away from work?

A: Walked away, drove away.

TT at 434–35. Similar information was elicited on cross-examination. *Id.* at 436. Moreover, this Court is of the opinion that Coniglio's alleged failure to object to "irrelevant testimony of the penalty for escape in Oklahoma," does not fall outside the realm of reasonably effective counsel, nor does petitioner cite any authority suggesting that result. More importantly, petitioner has not shown any prejudice from these statements. *See Washington,* 693 F.2d at 1258–62.

 Petitioner attacks Coniglio's failure to present a final argument on behalf of petitioner's life as an unconstitutional deprivation of effective counsel, citing *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). *Herring,* however, does not support petitioner's argument; the Court in *Herring* merely held that a statute providing the judge with discretion in determining whether closing arguments should be heard was constitutionally infirm. "The constitutional right of a defendant to be heard through counsel includes his right to have his counsel make a proper argument on the evidence and applicable law in his favor ... *unless he has waived his right to such argument." Id.* at 860, 95 S.Ct. at 2554 (emphasis added). Thus, although counsel has a right to make final arguments, he is not required to do so. *Id.* at 857–58, 95 S.Ct. at 2552–53. Indeed, the Eleventh Circuit recently

decline[d] to adopt a rigid rule which would require counsel to argue to the jury in a specific manner or to make particular objections during the penalty phase of a capital case. Each case turns on its own facts and the effectiveness of counsel must also be judged on the facts and conduct of those involved in each case.

*Sullivan v. Wainwright,* 695 F.2d 1306, 1309 (11th Cir.1983).

In addition, counsel's decision to waive final argument is less subject to constitutional attack when that decision was the result of a reasoned, strategic choice. In the instant case, waiver of final argument appears to be strategically motivated. Trial Judge John Booth noted that "[i]n the chambers, we discussed the arguments to the jury, and both defense and the State waived any arguments to the jury." *Id.* at 448. The Florida Supreme Court also found Coniglio's decision not to argue to be strategic. By waiving final argument on behalf of his client, Coniglio avoided potentially damaging arguments by the State on aggravating circumstances. *See Songer III,* 419 So.2d at 1047. Consequently, this Court is of the opinion that counsel's waiver of his final argument did not constitute ineffective assistance of counsel.

■ Petitioner also asserts that Coniglio improperly failed to object to several allegedly "fatally prejudicial deprivations of procedural rights in the sentencing phase." These include counsel's failure to object to the court's allegedly erroneous instructions concerning mitigating and aggravating circumstances and to the verdict form used in the penalty phase. Because the Court is of the opinion that both the instructions and the verdict form were constitutionally permissible, *see infra* pp. 1398–1399, counsel cannot be held to be ineffective for failure to challenge those instructions and verdict form. *Cf. Antone v. Strickland,* No. 82–21–Civ–T–GC, slip op. at 18 (M.D.Fla. Feb. 18, 1982) (appellate counsel cannot be held ineffective for not raising meritless claims), *aff'd and remanded on other grounds,* 706 F.2d 1534 (11th Cir.1983).

Although petitioner protests counsel's failure to object to the order in which the evidence was presented during the penalty phase, petitioner cites no case holding similar proceedings unconstitutional, nor does he cite any authority requiring a particular order of proof. Similarly, petitioner cites no case holding counsel ineffective, as petitioner suggests, for failing to request confirmation that a majority of the jury recommended the death penalty or that an instruction be given that if petitioner was sentenced to life in prison, he could not be released before twenty-five years (25) years in jail. This Court cannot hold Coniglio ineffective for failing to raise objections not supported by any authority; nor can this Court declare counsel ineffective when petitioner has not demonstrated any prejudice by the alleged failures. *See Washington v. Strickland,* 693 F.2d at 1258–62.

■ Petitioner contends that he was deprived of his right to effective assistance of counsel at the resentencing hearing. As discussed in more detail below, the nature of the remand for resentencing was very narrow. Coniglio cannot be faulted for failing to interview witnesses that would have allegedly testified on petitioner's behalf, not proffering evidence of petitioner's character from the time of the original sentencing, or otherwise conducting a substantial investigation prior to the resentencing. As the Florida Supreme Court noted in *Songer* II, it remanded the case to the trial court for resentencing consistent with the mandate of *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). That is, the purpose of the remand was to ensure that petitioner and his counsel were provided the opportunity to examine the presentence investigation report ("PSI") prior to resentencing. Once that narrow directive had been accomplished, the purpose of the remand would be fulfilled. None of petitioner's witnesses rebutted anything in the PSI. Consequently, petitioner's counsel cannot be said to be ineffective for failing to act outside the scope of the *Gardner* remand. Moreover, although peti-

tioner claims that he was not shown the PSI, this is incorrect. *See infra* p. 1402.

### III. *Jury Instructions and Verdict Form.*

■ Petitioner contends that the trial court's jury instructions and the advisory sentence verdict form improperly limited defense counsel's presentation, and the jury's consideration, of mitigating evidence. In instructing the jury, the trial judge merely tracked the language of Florida's death penalty statute, Fla.Stat. § 921.141 (1973); the advisory verdict form was modeled on the same language. Petitioner argues that this approach is impermissible, citing the Florida Supreme Court's interpretation of the statute in *Cooper v. State,* 336 So.2d 1133 (Fla.1976), and the United States Supreme Court's subsequent decision in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Petitioner argues that these instructions and the advisory form violated his due process rights and his right to reliability in the imposition of a death sentence.

The United States Court of Appeals for the Fifth Circuit ("Fifth Circuit"), the Eleventh Circuit, the Florida Supreme Court, and district courts within this district have all rejected similar arguments. In *Spinkellink v. Wainwright,* 578 F.2d 582, 620–21 (5th Cir.1978), the Fifth Circuit noted that at the time *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (upholding constitutionality of Florida's death penalty statute), was decided, the Florida death penalty statute did not

> prevent the sentencer from considering any aspect of the defendant's character and record or any circumstances of his offense as an independently mitigating factor.... *Cooper v. State,* [336 So.2d 1133 (Fla.1976) ] ... the case relied upon by Spenkelink, was not decided until July 8, 1976. Spenkelink was sentenced on December 20, 1973, and his conviction affirmed by the Florida Supreme Court on February 19, 1975. At the time of the sentencing proceeding, Spenkelink was afforded ... every opportunity to set

forth any and all mitigating factors in his favor

*Spinkellink v. Wainwright,* 578 F.2d at 621 (quoting in part *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)); *see also Dobbert v. Strickland,* 532 F.Supp. 545, 553 (M.D.Fla.1982).

Like Spinkellink, petitioner was sentenced on February 28, 1974, and that sentence was affirmed by the Florida Supreme Court on September 3, 1975, long before the Florida Supreme Court's decision in *Cooper.* The Court in *Lockett* held invalid any statute precluding the sentencer from considering mitigating evidence the defendant *proffers. See Lockett,* 438 U.S. at 604, 98 S.Ct. at 2964. Petitioner, however, was not prevented from proffering any evidence in mitigation. *See Goode v. Wainwright,* No. 82–30, slip op. at 20 (M.D.Fla. Feb. 25, 1982) (no *Lockett* violation where petitioner not precluded from offering any evidence in mitigation) *aff'd in part and rev'd in part on other grounds,* 704 F.2d 593 (11th Cir.1983). Indeed, Coniglio elicited testimony from petitioner at the penalty stage concerning petitioner's nonviolent escape, the paucity of previous crimes committed by petitioner, and their nonviolent nature. *See* TT at 433. Trial counsel also attempted to establish that petitioner was not under a sentence of imprisonment at the time of his escape. *Id.; see* Fla.Stat. § 921.141(5)(a) (1973). Finally, Coniglio attempted to establish that petitioner was "run down" at the time of the incident and that petitioner could not have been a "hardened criminal type," as he qualified for the work-release program in which he was enrolled. TT at 434, 443. Furthermore, the Supreme Court of Florida rejected this identical challenge by petitioner in *Songer* II, 365 So.2d at 700; *see also Ford v. Strickland,* 696 F.2d at 812; *cf. Jones v. State,* 411 So.2d 165, 168 (Fla.1982) (omission of instruction that mitigating circumstances not limited to those enumerated in statute does not require resentencing).

### IV. *Brown Issue.*

Petitioner asserts that the Florida Supreme Court improperly considered nonrecord material, including "a secret psychiatric

evaluation" of petitioner. This so-called "Brown" claim, *see Brown v. Wainwright,* 392 So.2d 1327 (Fla.), *cert. denied,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981), was thoroughly discussed and rejected in *Ford v. Strickland,* 696 F.2d at 810–11.

## V. *Improper Burden of Proof.*

▮▮▮ Petitioner also contends that the trial court placed upon him an unreasonable burden of proof when it allegedly "required" petitioner to present his mitigating evidence prior to the state's presentation of aggravating factors. Petitioner argues that in the mind of a reasonable juror, this order of presentation would unconstitutionally shift the burden of proof to himself. Petitioner cites no authority in support of his claim. Moreover, the Florida Supreme Court specifically rejected this claim in *Songer* IV: "Mitigating circumstances are offered during the penalty phase to show the totality of the circumstances. The evidence is offered to show that the circumstances warrant less than the penalty of death. There is no improper shifting of the burden of persuasion." *Id.* at 356; *see also Jackson v. Wainwright,* 421 So.2d 1385, 1389 (Fla. 1982) ("There can be no 'shifting' with respect to a fact which must be proved during the sentencing procedure."). Petitioner seems to be claiming that the order of proof shifted his burden relative to that of the prosecution. This argument resembles one that the Eleventh Circuit rejected in *Ford.*

> While the existence of an aggravating or mitigating circumstance is a fact susceptible of proof under a reasonable doubt or preponderance standard ... the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party.

*Ford v. Strickland,* 696 F.2d at 818. Thus, because "[t]he aggravating and mitigating circumstances are not facts or elements of the crime," *id.,* which must be proved beyond a reasonable doubt, the order of proof could not have unconstitutionally burdened petitioner.

## VI. *Mitigating and Aggravating Circumstances.*

▮▮▮ Petitioner asserts that the trial court failed to adequately consider several factors affecting the proper application of the death sentence. Petitioner claims that the trial court "failed to find or consider" petitioner's age, the alleged insignificance of his criminal history, or that his capacity to appreciate the wrongfulness of his conduct was substantially impaired. The Florida Supreme Court considered and rejected these claims in *Songer* I:

> In relating the statutorily enumerated mitigating circumstances to the [petitioner] ... [w]e have supplied these standards to ... [petitioner] and have found them to be inapplicable: (1) youth: Appellant is 23 years old, and today one is considered an adult responsible for one's own conduct at the age of 18 years; (2) intoxication: there is sufficient evidence to justify the jury's finding that Appellant was not so intoxicated as to be unaware of what he was doing; and (3) Appellant's three prior felony convictions which fall between the extremes mentioned in *Dixon* [*State v. Dixon,* 283 So.2d 1 (Fla.1973)], and which are not so insignificant as to ignore them. Thus, we agree with the trial court that there are no mitigating circumstances sub judice.

*Songer* I, 322 So.2d at 484. The undersigned is of the opinion that the Florida Supreme Court is correct. Twenty-three (23) is not such an early age that it might mitigate the homicide. In addition, not only was there evidence from which the jury could find that petitioner was not intoxicated at the time of the murder, but it was specifically established at the 3.850 Hearing that petitioner had not ingested drugs other than marijuana after leaving Oklahoma. *See* 3.850 Hearing at 52. Furthermore, although petitioner's previous convictions were not violent or of an extremely serious nature, it cannot be said that failure to recommend a sentence less than death as a result of these convictions for nonviolent offenses amounted to reversible error. The case upon which petitioner relies for support, *Eddings v. Oklahoma,* 455

U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), is inapposite. In *Eddings,* the trial judge *specifically refused* to consider certain mitigating evidence which the petitioner proferred. In contrast, petitioner in the instant case was not prevented from introducing anything into evidence. The Florida Supreme Court also specifically considered the mitigating factors that petitioner proferred. Consequently, petitioner's assertions are without merit.

Petitioner also contends that the trial court "erroneously found," as one of the aggravating circumstances, that petitioner was "under a sentence of imprisonment" at the time of the offense. Petitioner's argument is incorrect. "[A]t the time he killed the patrolman, [petitioner] was under a three-year sentence of imprisonment for the larceny of an automobile." *Songer* I, 322 So.2d at 484. This fact was established both at the penalty phase and at the 3.850 hearing.

Q [By the state]: This work release program that you were on, you were under a sentence of imprisonment at the time, were you not?

A [petitioner]: Yes.

3.850 Hearing at 43–44; *see also* TT at 436, 439–40; EH at 31.

■ Petitioner states that the trial court "erroneously found" a second aggravating circumstance, that petitioner killed a trooper during the exercise of a lawful government function. Petitioner further alleges that this aggravating circumstance was found without proof that petitioner knew the victim was an agent of the state government. First, the Florida Supreme Court found that "Songer shot Trooper Smith while he was in uniform, on active duty, and making a routine inspection of an apparently abandoned vehicle, all of which was a lawful exercise of a governmental function." *Songer* I, 322 So.2d at 484. This finding of fact is presumed correct, unless the petitioner falls within one of the eight exceptions enumerated in 28 U.S.C. § 2254(d) (1976). *See Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). Petitioner has not shown that

he is within one of the eight exceptions. In addition, after an independent examination of the record, this Court is also of the opinion that the evidence supports the trial court's finding of these aggravating circumstances. Second, petitioner also cites no authority requiring that defendant must be aware that the victim is exercising a governmental function.

■ Petitioner also attacks this particular aggravating circumstance as unconstitutionally vague on its face. In upholding Fla.Stat. § 921.141 (1973)—including this particular aggravating circumstance—in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the United States Supreme Court held that a person convicted of first-degree murder in Florida receives "an informed, focused, guided, and objective inquiry into the question whether he should be sentenced to death." *Proffitt v. Florida,* 428 U.S. at 259, 96 S.Ct. at 2970. In validating the statute, the Court necessarily approved the particular aggravating circumstance at issue here. In *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1976), the Supreme Court upheld an aggravating circumstance in the Georgia Code substantially similar to the subsection presently under attack. Georgia Code § 27–2534.1(b)(8) (1978) lists as an aggravating circumstance justifying the imposition of the death penalty, "[t]he offense of murder . . . committed against any peace officer . . . while engaged in the lawful performance of his official duties." *Godfrey v. Georgia,* 446 U.S. at 424 n. 2, 100 S.Ct. at 1762 n. 2. The Supreme Court stated that "the . . . statutory aggravating circumstances . . . are considerably more specific or objectively measurable [than § 27–2534.1(b)(7), which the court held unconstitutionally vague as applied]." *Godfrey v. Georgia,* 446 U.S. at 423 n. 2, 100 S.Ct. at 1762 n. 2. This Court refuses to add any additional requirements to a constitutionally specific statute.

Petitioner also claims that the latter aggravating circumstance is unconstitutionally vague as applied. This Court disagrees. A state trooper's examination, as in this

case, of what could well be an abandoned car, or a motorist in distress on the side of a road, is clearly within the trooper's exercise of his lawful governmental function.

### VII. *Lack of Charge Conference Transcript.*

 Petitioner argues that the absence of the charge conference transcript denied him his right to due process, reliability in the imposition of sentence, effectiveness of counsel on appeal and proportionality of review of his sentence. This claim is without merit. Although agreeing with petitioner that a defendant under a sentence of death in Florida has the right to have his entire record reviewed, the Court in *Songer* IV found that

> [a]s long as all instructions are required to be in writing, and all were in the trial of this case, the statements made by the court and the attorneys at the charge conference become immaterial. The petitioner could suffer no prejudice from the failure to include such statements in the record.

*Songer* IV, 423 So.2d at 356.

In *Stephens v. Zant,* 631 F.2d 397, 402 (5th Cir.1980), *modified on other grounds,* 648 F.2d 446 (5th Cir.1981), *aff'd on other grounds, Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Fifth Circuit rejected the claim of a death-row inmate that the absence of the transcript of both the closing arguments and arguments at petitioner's sentencing violated the eighth amendment. The court stated that

> [i]f the record presented to the [court] was so deficient that it would be impossible for that court to perform the function required of it under *Gregg* [*Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)], or would create "a substantial risk that the penalty is being inflicted in an arbitrary and capricious manner ... petitioner's sentence cannot be permitted to stand.

*Id.* at 403 (citations omitted). Like the defendant in *Stephens,* however, petitioner has not offered any evidence that he was "actually prejudiced" by any statements

made at the charge conference or by the absence of the transcript itself. *See Stephens v. Zant,* 631 F.2d at 404. Unlike *Stephens,* where the court reached its result despite the absence of the transcript of both closing arguments and arguments during the sentencing phase of defendant's trial, petitioner merely protests the absence of a charge conference transcript. The absence of a transcript of this small and relatively unimportant portion of petitioner's trial cannot inject the type of unreliability in sentencing that *Gregg* condemned. *Cf. United States v. Selva,* 559 F.2d 1303, 1306 (5th Cir.1977) (under Court Reporter Act, 28 U.S.C. § 753 (1976), cases reversed only where "substantial and significant portion" of record is missing; types of cases requiring reversal include missing transcripts of opening or closing arguments, voir dire, or defense arguments).

### VIII. *Statutory Challenge.*

 Petitioner also challenges the constitutionality of Fla.Stat. § 921.141 (1973) on its face, and as applied to petitioner. Petitioner states that the statute is unconstitutional because it contains no requirement that the aggravating circumstances be alleged, or that notice be given prior to the trial or sentencing proceedings. The court in *Spinkellink v. Wainwright,* 578 F.2d at 609–10, rebuffed a nearly identical claim, stating that the statute itself defines the aggravating circumstances upon which a court or juror may rely; a petitioner need only examine the statute to receive proper notice. *Cf. Ruffin v. State,* 397 So.2d 277, 282 (Fla.) (defendant has no right to bill of particulars concerning aggravating circumstances upon which state will rely to support its request for the death penalty), *cert. denied,* 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981).

Petitioner also asserts that the Florida statute is unconstitutional because no standard of proof exists for the "overall weighing process" to determine whether death is appropriate, and the jury is not sufficiently guided in applying both the aggravating and mitigating circumstances. These con-

tentions have already been discussed and found to be without merit. *See supra* pp. 1399, 1400. The United States Supreme Court recently rejected a similar claim in *Zant v. Stephens,* —— U.S. at ——–——, 103 S.Ct. at 2742–43. The Court held that the "absence of legislative or court-imposed standards to govern the jury in weighing the significance of . . . aggravating circumstances" does not render Georgia's capital sentencing statute invalid. *Id.* at ——, 103 S.Ct. at 2744. The Georgia statute passed constitutional muster because the aggravating circumstances properly circumscribed the class of persons eligible for the death penalty. The statute also provides the requisite individualized determination and appellate review regarding the imposition of the death penalty on those persons who are selected for capital punishment. *Id.* This Court is of the opinion that Florida's capital sentencing statute is sufficiently similar to the Georgia statute to withstand the same constitutional scrutiny. Like the Georgia statute, the aggravating circumstances contained in the Florida statute circumscribe those eligible for the death penalty. The Florida statute also provides that petitioners under a sentence of death will receive a substantially similar appellate review to that of their Georgia counterparts. Thus, petitioner's contention that the Florida statute is unconstitutional is without merit. Finally, petitioner's claim that the aggravating circumstances are unconstitutionally vague, as applied, has already been rejected by this Court. *See supra* pp. 1399–1401.

### IX. *Gardner Violation.*

Petitioner attacks both his sentencing and resentencing as unconstitutional under *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). In *Gardner,* the Supreme Court held that a petitioner in a capital case must be given the opportunity to deny or explain information contained in a PSI. The Supreme Court remanded the instant case for consideration in light of its *Gardner* opinion. *See Songer v. Florida,*

430 U.S. 952, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977).

As a preliminary matter, this Court notes that there may never have been an initial *Gardner* violation. The trial judge noted "the receipt of a pre-sentence investigative report . . .[6] by the State and defendant's attorney . . . ." Findings of Fact (Feb. 28, 1974); *see also* TT at 450 ("[Court]: Has the State and the defendant each received a copy of the presentence investigation report? Mr. Coniglio: We have, your honor."); *Songer* II, 365 So.2d at 699 (counsel saw PSI and had opportunity to challenge that document on both original sentencing and resentencing).

 Petitioner also contends that there was "no meaningful revisiting of the case" on resentencing because the court denied petitioner's motion to produce various witnesses. The Florida Supreme Court, however, correctly stated that the resentencing hearing "was only for the purpose of allowing the defendant an opportunity to rebut what was contained in the presentence investigation report." *Songer* II, 365 So.2d at 699–700; *see also Funchess v. State,* 399 So.2d 356 (Fla.1981) (purpose of resentencing after *Gardner* does not include convening an advisory jury). Because none of the witnesses petitioner wished to testify would have rebutted anything in the PSI, he is not entitled to another resentencing proceeding.

### X. *Ineffective Assistance of Appellate Counsel.*

 Petitioner claims that his counsel on *original appeal* was ineffective. In support of his argument, petitioner lists a number of points which appellate counsel allegedly should have raised on appeal, but did not. As a preliminary matter, this Court emphasizes that counsel cannot be held ineffective for failure to raise meritless contentions. *Cf. Antone v. Strickland,* No. 82–61–Civ–T–GC, slip op. at 18 ("Reasonable assistance of appellate counsel does not include an obligation to raise issues on appeal in those areas of the law which

---

**6.** Petitioner's PSI was merely a copy of peti- tioner's "rap sheet."

appear well-settled."). Nearly all of the points that petitioner insists should have been raised have been discussed earlier and rejected.

■ The only point not addressed previously concerns appellate counsel's failure to argue the trial court's lack of an instruction to the jury that the State had the burden of proving the existence of aggravating circumstances beyond a reasonable doubt. Appellant cites no authority specifically requiring a trial court to so instruct the jury. More importantly, after the jury has recommended a sentence to the trial judge, both the state trial judge and the Florida Supreme Court independently determine the sufficiency of the aggravating circumstances. The trial judge "must focus on the individual circumstances of each homicide and each defendant," and "the evidence of the aggravating and mitigating circumstances is reviewed and reweighed by the Supreme Court of Florida." *Proffitt v. Florida,* 428 U.S. 252–53, 96 S.Ct. 2966–67. Moreover, "any suggestion that the Florida court engages in only cursory or rubber-stamp review of death penalty cases is totally controverted ...." *Id.* at 259, 96 S.Ct. at 2969. In this case, the Florida Supreme Court specifically found that the two aggravating circumstances found by the trial judge were adequately supported by the record. *See Songer I,* 322 So.2d at 483. Thus, even if it were determined that the trial court should have specifically instructed the jury on the state's burden of proof concerning aggravating circumstances, that error is harmless, given the multi-layered system of review that the Florida statute requires. In addition, the undersigned is of the opinion that the State did in fact prove the aggravating circumstances beyond a reasonable doubt.

■ Finally, the Eleventh Circuit's recent statement in *Sullivan v. Wainwright,* 695 F.2d 1306 (11th Cir.1983), is also dispositive of petitioner's claims that he did not receive effective assistance of counsel on appeal:

Sullivan also contends that counsel was ineffective because he did not raise cer-

tain issues on direct appeal to the Florida Supreme Court. Counsel did file a brief on appeal which argued and supported several substantive legal claims, such as the admission of testimony relating to a polygraph. This is not a situation similar to *Mylar v. Alabama,* 671 F.2d 1299, 1302 (11th Cir.1982), where we held that failure to file a brief in a nonfrivolous appeal falls below the standard of competency expected and required of counsel in criminal cases and therefore constitutes ineffective assistance of counsel. Sullivan's appellate counsel functioned as an active advocate on behalf of his client. *Anders v. California,* 386 U.S. 738, 744 [87 S.Ct. 1396, 1400, 18 L.Ed.2d 493] (1967). The failure of counsel, in 1974, to advance certain points on appeal which subsequently gained judicial recognition does not render counsel ineffective. Sullivan acknowledges that he was one of the first defendants to be tried under Florida's post-*Furman* death penalty statute. At the time of trial and appeal in 1973–74, the law concerning capital sentencing was in a state of reformation. Sullivan does not direct us to any case decided at that time and overlooked by counsel. Counsel's failure to divine the judicial development of Florida's capital sentencing does not constitute ineffective assistance of counsel. *Accord Proffitt v. Wainwright* [685 F.2d 1227 (11th Cir.1982)].

Thus, we find that Sullivan received reasonably effective assistance of counsel ... on direct appeal.

*Sullivan v. Wainwright,* 695 F.2d at 1309; *see also Alvord v. Wainwright,* 564 F.Supp. 459 at 477 (M.D.Fla.1983) ("Typically, claims of ineffective assistance on appeal turn on counsel's complete failure to file or prosecute the appeal."). Like Sullivan's attorney, petitioner's appellate counsel filed a brief on direct appeal raising several challenges. These included an attack on the sufficiency of the evidence and various evidentiary objections, as well as a series of challenges to the Florida statute itself. Thus, it cannot be said that appellate coun-

sel's representation even approximated the type of conduct that *Mylar* condemned.

In addition, several of the claims which petitioner argues that his appellate counsel should have raised on direct appeal were eventually considered by the Florida Supreme Court. *See, e.g., Songer* I (disruption of governmental function); *Songer* II (*Lockett* issue); *Songer* III (instructions on burden of proof at sentencing, and effectiveness of trial and appellate counsel); *Songer* IV (improper "shifting" of burden of proof at penalty phase; absence of charge conference transcript; ineffectiveness of trial and appellate counsel). This Court agrees with the Florida Supreme Court that "[p]etitioner has failed to demonstrate that he was prejudiced in any way because of failure of his counsel to raise [these] issue[s] instead of the court's pursuing the matter[s] on its own volition." *Songer* IV, 423 So.2d at 356–57. Hence, nearly all of petitioner's claims were considered either on direct appeal or at a later time by the Florida Supreme Court. Having shown no prejudice by appellate counsel's failure to raise these issues, petitioner's claim of ineffective assistance of counsel on appeal must fail for the reasons articulated above.

XI. *Addition of Third Aggravating Circumstance.*

██ Petitioner claims that the Florida Supreme Court improperly added a third statutory aggravating circumstance "not found" by the trial court. This claim has never been raised before any other tribunal, despite the continuity of petitioner's present counsel from the time of filing the Rule 3.850 motion until the present date. At a minimum, this question should have been raised in petitioner's 3.850 motion, and certainly on petitioner's state petition for writ of habeas corpus. Moreover, unlike the procedural setting in *Proffitt v. Wainwright,* 685 F.2d at 1266 n. 60, the State in this case has properly raised the "waiver" argument and cannot be said to have waived its objections to the instant claim. As a result, petitioner is barred from raising this belated claim, unless he demonstrates cause for, and prejudice from, not

raising this contention. *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558 at 1572, 71 L.Ed.2d 783. Because petitioner has made no allegations concerning cause, this Court need not consider whether petitioner has demonstrated sufficient prejudice.

██ This Court notes in passing, however, that even if petitioner had properly preserved this claim for purposes of the present petition, the claim lacks merit. As a general rule, even when one or more of the aggravating circumstances upon which a court relied in imposing the death sentence is overturned, the sentence of death will not be overturned where "at least one valid aggravating circumstance remains." *Zant v. Stephens,* —— U.S. at ——–——, 103 S.Ct. at 2748. This is especially true when only insignificant mitigating circumstances exist, or there are no mitigating circumstances at all. *See Dobbert v. Strickland,* 532 F.Supp. at 555–56 (upholding death penalty despite the striking by Florida Supreme Court of two of four statutory aggravating circumstances found by state trial judge); *Ferguson v. State,* 417 So.2d 631, 636 (Fla.1982) (negation of one of three statutory aggravating circumstances does not require reversal in absence of mitigating factors); *Jacobs v. State,* 396 So.2d 1113, 1118–19 (Fla.) (trial court's incorrect finding of four statutory aggravating factors when three should have been enumerated did not require reversal where only mitigating circumstance was a lack of prior history of significant criminal activity), *cert. denied,* 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981); *Clark v. State,* 379 So.2d 97, 104 (Fla.1979) ("doubling up" of aggravating circumstances not reversible error where no mitigating circumstances and several aggravating circumstances remained), *cert. denied,* 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 371 (1981). In the instant case, the trial judge found two aggravating circumstances, both of which were affirmed on appeal. *See Songer* I, 322 So.2d at 484. The Florida Supreme Court merely added an aggravating circumstance after petitioner's first appeal. This action, if error, was harmless. The existence of

the two statutory aggravating circumstances, with no mitigating circumstances balanced against them, is more than enough to sustain petitioner's death penalty. *See Zant v. Stephens,* —— U.S. at —— ——, 103 S.Ct. at 2748; *Jacobs v. State,* 396 So.2d at 1118–19 (death penalty preserved when one or more statutory aggravating circumstances found). The Florida Supreme Court agreed when it affirmed petitioner's second sentence in *Songer* II.

In addition, it is unclear whether the Florida Supreme Court actually intended to add a third aggravating factor. In his initial findings of fact, the trial court judge specifically found two statutory aggravating factors: "(1) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of law, and (2) The capital felony was committed by a person under a sentence of imprisonment . . . ." Findings of Fact (Feb. 28, 1974); *see* Fla.Stat. § 921.141 (1973). In support of this latter aggravating circumstance, the trial judge noted that petitioner escaped from prison while under a sentence of imprisonment. Findings of Fact (Feb. 28, 1974). In affirming petitioner's sentence, the Supreme Court of Florida specifically noted an additional aggravating circumstance, to-wit: "while serving such sentence appellant escaped from the Oklahoma prison system and, at the time of the fatal shooting, was a fugitive from the law." *Songer* I, 322 So.2d at 484; *see also* Fla.Stat. § 921.141(5)(e) (1973).

Nonetheless, on remand after resentencing, the trial judge again found the same two aggravating circumstances in support of the capital sentence, and listed identical reasons for upholding his findings. The Florida Supreme Court affirmed this sentence in *Songer* II—printing the entire trial court order in a footnote—without additional comment concerning the aggravating circumstances. Hence, it is possible to conclude, as the State suggests, that the addition of the third aggravating circumstance was "inadvertent." Even assuming, however, that the Florida Supreme Court's addition of the third aggravating circum-

stance was not inadvertent, the result remains the same.

The case upon which petitioner relies for support, *Proffitt v. Wainwright,* 685 F.2d 1227 (11th Cir.1982), is inapposite. In that decision, Proffitt attacked his sentence because it was allegedly based on *unsupported* and *nonstatutory* aggravating factors. *Id.* at 1261, n. 52. In the instant case, however, petitioner attacks the Florida Supreme Court's finding of an alleged additional *statutory* aggravating factor which the evidence fully supports. *See Songer* I, 322 So.2d at 484; TT at 240–42, 265, 364–65; EH 22, 37.

This case is also distinguishable from *Presnell v. Georgia,* 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978). In that case, the Supreme Court rejected the imposition of the death penalty when an appellate court rejected the jury's basis for its sentence in favor of a different theory. In the instant case, the Florida Supreme Court did not reject the lower court's findings, but instead affirmed them. The court merely added an aggravating circumstance that was fully supported by the evidence. In *Proffitt,* the Eleventh Circuit stated that "[o]nly where the factors supporting the death sentence are so clear that proper application of the statute by reasonable persons could produce no other result should a sentence be affirmed despite constitutional error." *Proffitt v. Wainwright,* 685 F.2d at 1269. This Court is of the opinion that no constitutional error occurred. Even if, however, the Florida Supreme Court erred in adding a third aggravating circumstance, the undersigned believes that no reasonable person properly applying the statute could overturn petitioner's death sentence, based upon the existing statutory aggravating factors present in this case. As a result, petitioner's contention is not only barred by procedural default, but it also fails on the merits as well.

XII. *Other Grounds.*

Petitioner argues that the procedures used to impose his death sentence were unreliable and arbitrary, and therefore, vio-

lative of both the eighth and fourteenth amendments to the United States Constitution. In part, petitioner attacks the trial court's jury instructions as wholly inadequate to guide the jury's exercise of its discretion. First, petitioner claims that the jury is given no guidance in applying the aggravating and mitigating circumstances. Second, he argues that the jury was not properly instructed as to the burdens of proof concerning both the statutory aggravating factors and mercy. Third, petitioner contends that the trial judge should have instructed the jury that they could recommend a life sentence for the petitioner even if aggravating circumstances were found.

■ Petitioner did not, however, object to the court's instructions at trial, as Fla.R. Crim.P. 3.390(d) requires. Indeed, petitioner's counsel specifically indicated that he had no objections to any of the instructions. TT at 448. Petitioner also failed to raise these claims on direct appeal. Based on petitioner's failure to object to the instructions at trial, and his failure to raise these claims on direct appeal, petitioner is now barred from raising these issues, unless he can demonstrate cause and prejudice for these failures. *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). Petitioner has alleged neither cause nor prejudice, and is now barred from raising these claims.

■ Similarly, petitioner advances other claims that are barred by his failure to object at trial or to raise arguments concerning these claims on direct appeal. *See Engle v. Isaac,* 102 S.Ct. at 1572. These claims include the trial court's allegedly erroneous failure to define the aggravating or mitigating circumstances, and its failure to inform the jury concerning options in sentencing, and its failure to poll the jury to ensure that a majority of the jury panel recommended the death penalty.

Petitioner's claim that electrocution violates the eighth amendment was rejected nearly 100 years ago by the United States Supreme Court in *In re Kemmler,* 136 U.S. 436, 447, 10 S.Ct. 930, 933, 34 L.Ed. 519 (1890), *cited with approval* in *Gregg v.*

*Georgia,* 428 U.S. 153, 178, 96 S.Ct. 2909, 2927, 49 L.Ed.2d 859 (1976); *Spinkellink v. Wainwright,* 578 F.2d at 616.

Petitioner also asserts that he was deprived of effective counsel on resentencing. Petitioner argues that counsel did not raise the unconstitutionality of the Florida statute as applied to petitioner. This Court has discussed and rejected this claim as without merit. *See supra* p. 1401. Appellate counsel cannot, therefore, be ineffective for failure to raise this claim. *See Antone v. Strickland,* No. 82–61–Civ–T–GC, slip op. at 18.

Petitioner also states that appellate counsel did not raise the failure of either trial counsel or the court to show petitioner his "rap sheet" at the resentencing. Both of these claims have been discussed and rejected. *See Songer* IV, 423 So.2d at 357; *supra* p. 1402.

Accordingly, it is

ADJUDGED:

1. That the petition for writ of habeas corpus is hereby denied;

2. That the stay of execution, previously entered by this Court on December 3, 1982, is hereby dissolved; and

3. That the Clerk shall enter Judgment dismissing this action.