PER CURIAM.
The appellant in this case, Mabel Frances Thompson, was indicted by a Grand Jury for first degree murder of her husband, Bobby Thompson. She pled not guilty and was tried in the Circuit Court for Seminole County, Florida in January 1970. (At the close of the state’s case, the defendant moved for a judgment of acquittal. The motion was denied.) The jury convicted her. She now appeals from the adjudication and sentence.
The appellant raises four points on this appeal, but only one needs to be discussed because it is dispositive of the cause. That is the second point, and it challenges the sufficiency of the evidence.
The evidence in this case, given all reasonable intendments in favor of the jury verdict, indicates that the defendant and her deceased husband were residents of Seminole County, Florida in June 1968 where they resided in a home in West Sanford. They were evidently having marital difficulties as a result of which the defendant was from time to time subjected to physical abuse by the deceased. In the latter part of June 1968, the deceased was reported missing. This prompted an investigation of the defendant’s home by an officer from the Sanford Police Department. The officer testified that in the latter part of June he entered defendant’s house which she had theretofore occupied with her late husband and found nothing out of order. This same officer testified that he entered the house again in January of 1969 and found a body in a hall closet. The body was later identified as that of the defendant’s husband. Expert testimony indicated that the deceased was shot at least twice in the head by a .22 caliber pistol and that such was the cause of his death.
Other witnesses testified that at various times before the disappearance of the deceased, the defendant had complained about the treatment he accorded her and had stated that she intended to kill the deceased in the event he molested her further. One such conversation occurred in or about May 1968 between the defendant and a nephew of the deceased. Another occurred on or about 29 June 1968 between the defendant and one Loraine Jackson. During this conversation the defendant told Jackson that she hated the deceased and wanted to see him dead and was going to kill him.
Prior to the disappearance of the deceased, the defendant was shown to have been in possession of a .22 caliber pistol. Expert testimony indicated that the bullets removed from the brain of the deceased could have been fired from the pistol.
The police officer who entered the defendant’s house in late June 1968 testified that when he reentered the house in January 1969 he found the condition of the house markedly changed. On the latter visit he noticed dirty dishes in the sink, much of the furniture had been removed from the house, and a trail of what ap *220 peared to be blood running from the bathroom to the closet in which the deceased was found.
A pathologist examined the body and extracted therefrom two bullets which were lodged in the brain. He testified that the body had been dead for a period over one month. Beyond this, he was unable to testify with reasonable medical certainty as to how long the body had been dead.
A person who ran a small retail gun shop in Seminole County testified that in mid-July 1968 the defendant brought him a .22 caliber pistol and asked him to sell it for her. This witness identified the pistol which was introduced in evidence as the same pistol defendant had brought to him in mid-July 1968.
The state’s evidence supporting the guilt of the defendant was entirely circumstantial. The rules relating to circumstantial evidence were set out by us in Terzado v. State, Fla.App.1970, 232 So.2d 232. In that case we indicated that where the state’s case is based entirely on circumstantial evidence, such evidence must exclude all hypotheses of innocence. In the present case, viewing the evidence in its most favorable light for the state, we cannot conclude that the evidence excludes all reasonable hypotheses of innocence and thereby leads to the conclusion that no one other than the defendant committed the crime.
While the evidence here certainly indicates that the defendant perhaps had the desire to kill her husband as well as the mechanical means, the evidence is simply lacking in the identification of the plaintiff with the crime. We may reasonably assume from the evidence that the deceased was murdered in his own house sometime between his “disappearance” in late June 1968 and one month before his remains were found in January 1969, but there is no evidence as to when within that time period the murder occurred. The defendant sold her pistol in July 1968. This suggests the murder, if it was committed by her, occurred between late June and mid-July 1968. But there is no evidence that places the date of death within this time bracket. Furthermore the evidence does not exclude the possibility that the husband in fact left the marital home in late June, returned some time later, and was murdered in the home by someone other than the defendant. The testimony of one of the investigating officers as to the change in the appearance of the interior of the house between June 1968 and January 1969 lends some credence to this hypothesis.
By failing to exclude all reasonable hypotheses of innocence, the evidence fails to establish that the crime was in fact committed by the defendant and no other person. As we said in Terzado v. State, supra, “. . . circumstantial evidence . . must be of a conclusive nature and lead to the conclusion that the accused and no one else committed the offense. It is not sufficient that the evidence creates a probability of and be consistent with guilt. The evidence must be inconsistent with innocence . . . ” It is our opinion that the evidence, when measured by this standard, is legally insufficient to support the jury verdict.
Judgment and sentence are reversed and the defendant is discharged.
Reversed.
REED, C. J., and WALDEN and OWEN, JJ., concur.