322 So.2d 481 (1975)
Carl Ray SONGER, a/K/a Robert Berry, Appellant,
v.
STATE of Florida, Appellee.
No. 45584.
Supreme Court of Florida.
September 3, 1975.
*482 James A. Gardner, Public Defender, and Charles H. Livingston, Sp. Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Gerry B. Rose, Asst. Atty. Gen., for appellee.
CREWS, JOHN J., Circuit Judge.
This cause comes before this Court on direct appeal from a conviction of murder in the first degree and a sentence of death imposed on Appellant in the Circuit Court of Osceola County. Jurisdiction vests in this Court pursuant to Article V, Section 3(b)(1), Florida Constitution. The facts of the cases are as follows.
At approximately 6:00 A.M. on the cold morning of December 23, 1973, hunters looking for dogs observed an automobile with its motor running, parked on a gravel road about fifty yards from U.S. Highway 19 near Crystal River, in Citrus County, Florida. They approached the car, knocked on the window of the passenger side and spoke to one, Ronald Jones, who raised up from a prone position on the front seat. The appellant was lying down on the rear seat with his face toward the front. Although he did not sit up or speak to them, Appellant's eyes were opened and he appeared to be listening to the conversation about dogs going on between one of the hunters, in the presence of the other, with Jones.
Between 8:30 and 9:00 A.M. two other hunters were about thirty feet behind Trooper Ronald G. Smith of the Florida Highway Patrol when he stopped to check the parked vehicle. These hunters saw Smith approach the car, talk with Jones, search Jones at the rear of the auto, and return to the car with his hand on his pistol. Thereupon Smith leaned into the car. Suddenly, a fusillade of shots occurred after which the officer was dead (death resulted from a loss of blood due to four bullet wounds in deceased's upper body plus a wound in one knee). The Appellant came out of the back seat of the automobile, shot once toward the hunters, jumped back inside the car and with Jones driving, attempted to make his getaway.
One of the hunters, armed with a 308 semi-automatic rifle, shot certain tires out on the moving automobile causing it to stop. Its occupants attempted to escape by running, but after Jones was shot in the foot by one of the hunters, the Appellant advisedly surrendered, holding his hands with his pistol in one over his head and upon being so ordered, tossed the pistol over the car. The hunters then called for help on the Trooper's radio.
Appellant testified at trial that, at the time of the shooting, he was under the influence of drugs and that he woke to find a "vision"  an arm that was pulling him,  so he rolled to the floor of the car where he got his single action gun and fired repeatedly *483 at the vision. After the shooting, it was found that Appellant's gun contained six empty cartridges, while all six cartridges in Trooper Smith's pistol had also been fired.
At the jury trial which was held for the 23-year-old Appellant, a pathologist testified regarding the location of certain bullet wounds, and later, in his closing argument, the prosecutor referred to certain pathological evidence to convince the jury of Appellant's guilt. The jury returned a verdict of guilty of premeditated murder with a recommendation that Appellant be executed. The trial court entered its written Findings of Fact in support of the death penalty and sentenced Appellant to be electrocuted. In its Findings of Fact, the court relied on a Presentence Investigation Report (PSI) which showed that Appellant had committed various non-violent crimes (two instances of auto theft and one forged check case) and concluded that there were aggravating, rather than mitigating, circumstances in this fatal shooting.
While Appellant admits that he is guilty to some degree of homicide, he questions the sufficiency of the circumstantial evidence sub judice to support a finding of premeditation.[1] Appellant further concedes that the duration of the premeditation is immaterial so long as the murder results from a premeditated design existing at a definite time to murder a human being;[2] nevertheless, he argues that the evidence shows that he was surprised when suddenly awakened by the trooper and that he was so intoxicated by drugs that he could not form the mental state required to premeditate the shooting.[3] Based on this reasoning, Appellant concludes that the evidence is legally insufficient to support a jury verdict of first degree murder. We disagree. The record shows: that Appellant had absconded from the Oklahoma authorities, and, logically, could have been avoiding arrest; that the trooper leaned over the front seat to wake a supposedly sleeping person; that Appellant was sufficiently alert to accurately shoot the trooper four out of four shots from a single-action pistol which he had to "fan" for rapid fire  while lying on the floor of the back seat of the automobile; that the trooper suffered multiple wounds in such rapid succession that he did not have time to take defensive action until he had been shot at least once; and that there was testimony that contradicted Appellant's contention that he was under the influence of drugs. This meets with criteria relating to premeditation that was suggested in Larry v. State.[4] Recognizing the established principle that, where a jury's verdict is supported by competent substantial evidence, an appellate court should not substitute itself as the trier of the fact,[5] we accept the jury's evaluation of the evidence; in doing so, we specifically reject Appellant's contention that a defendant's interpretation of circumstantial evidence should be accepted completely unless it is specifically contradicted.
We also reject Appellant's contention that remarks made by the prosecutor in closing argument constitute reversible error. Certain statements, though incorrectly attributed by the State Attorney to the pathologist, did have a basis in the trial record. Furthermore, Appellant is precluded from asserting this argument since he failed to object at trial to the allegedly improper prosecutorial comment.[6] Moreover, the prosecutor's possibly inappropriate use of medical terminology, and *484 the conflicts concerning the angles of the wounds and size of neck wound are not such decisive factors that would justify, not to mention, require a finding of fundamental error by this Court.
When the death penalty has been imposed, this Court has a separate responsibility to determine independently whether the imposition of the ultimate penalty is warranted.[7] An examination of the record in this case discloses the following aggravating circumstances as recognized by statute:[8] (1) at the time he killed the patrolman, Appellant was under a three-year sentence of imprisonment for the larceny of an automobile; (2) while serving such sentence, Appellant escaped from the Oklahoma prison system and, at the time of the fatal shooting, was a fugitive from the law; (3) Appellant shot Trooper Smith while he was in uniform, on active duty, and making a routine inspection of an apparently abandoned vehicle, all of which was a lawful exercise of a governmental function. In relating the statutorily enumerated mitigating circumstances[9] to the instant case, even Appellant admits that there are only three which possibly apply, i.e., youth, intoxication and insignificant prior history of criminal activity. We have supplied these standards to Appellant and have found them to be inapplicable: (1) youth: Appellant is 23 years old, and today one is considered an adult responsible for one's own conduct at the age of 18 years; (2) intoxication: there is sufficient evidence to justify the jury's finding that Appellant was not so intoxicated as to be unaware of what he was doing; and (3) Appellant's three prior felony convictions which fall between the extremes mentioned in Dixon[10] and which are not so insignificant as to ignore them. Thus, we agree with the trial court that there are no mitigating circumstances sub judice.
As for Appellant's objection to the trial court's consideration of the presentence investigation report, we find no error in that consideration, which in fact is authorized by Rule 3.710, Rules of Criminal Procedure, that supplements Section 921.141, Florida Statutes. We observe that Appellant did not object to such consideration and that he received a copy of the PSI and had the opportunity to rebut it prior to sentencing. While it is true that Section 921.141, Florida Statutes, does not provide specifically for the consideration of a PSI report, it is our view that the statute should not be so strictly construed as to prevent the consideration of a document authorized by the Rules to be considered.[11]
In his final point on appeal, Appellant requests this Court to reconsider its decision in Dixon[12] on two grounds, i.e., that the procedure by which he was condemned to death is unconstitutionally discretionary and that the death penalty is per se cruel and unusual punishment and, therefore, unconstitutional.[13] We disagree. In our view, the reasoning in Dixon answers these objections, and we find no cause for receding therefrom.
The Appellant having failed to demonstrate reversible error, his conviction for murder in the first degree and sentence of death are hereby affirmed.
It is so ordered.
ADKINS, C.J., ROBERTS and OVERTON, JJ., and LEE and McCRARY, Circuit Judges, concur.
NOTES
[1] Hill v. State, 133 So.2d 68 (Fla. 1961); Thompson v. State, 276 So.2d 218 (Fla.App. 1973), cert. den., 281 So.2d 210.
[2] Snipes v. State, 154 Fla. 262, 17 So.2d 93 (1944).
[3] Britts v. State, 158 Fla. 839, 30 So.2d 363 (1947).
[4] 104 So.2d 352 (Fla. 1958).
[5] Harrell v. State, 245 So.2d 302 (Fla.App. 1971).
[6] State v. Jones, 204 So.2d 515 (Fla. 1967).
[7] State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. den. in consolidated case (Hunter), 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295.
[8] Section 921.141(3), Florida Statutes, now Section 921.141(5), Florida Statutes.
[9] Section 921.141(4), Florida Statutes, now Section 921.141(6), Florida Statutes.
[10] See Note 7, supra.
[11] Cf. Davis v. State, 297 So.2d 289 (Fla. 1974).
[12] See Note 7, supra.
[13] Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 246 (1972).