No. 84–5690. SONGER *v.* WAINWRIGHT, SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, ET AL. C. A. 11th Cir. Certiorari denied. ▮▮▮▮▮▮▮▮▮▮▮▮

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

Petitioner Carl Songer was sentenced to death in 1974. At the sentencing hearing, Songer's attorney did not offer available character evidence in mitigation, not because he had none, or as a strategic manuever, but because he reasonably concluded that Florida law did not permit admission of such evidence. We have consistently held, however, that in capital cases "the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record." *Lockett* v. *Ohio*, 438 U. S. 586, 604 (1978) (opinion of BURGER, C. J.). We have applied this rule not only when the preclusion of mitigating evidence results under the plain terms of a statute, as in *Lockett*, but also where a nonstatutory application of state law violates the rule. *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982). In Songer's case, the District Court ruled that Florida's capital sentencing statute was, in 1974, reasonably understood to preclude introduction of mitigating evidence unless the evidence fit into certain statutorily defined categories. Because that understanding, and Songer's consequent death sentence, violated clear principles expressed in *Lockett* and *Eddings*, this Court should vacate Songer's sentence and remand the case for a proper proceeding.

I

Songer was convicted in February 1974 of the first-degree murder of a Florida highway patrolman. The evidence at trial showed that Songer was asleep in the back seat of a car lawfully stopped off the highway when the investigating patrolman reached

into the car with his pistol in a ready position. Suddenly thus awakened, Songer grabbed his own gun, and both Songer and the patrolman fired multiple shots. The patrolman died from the injuries he received.

After returning a verdict of guilty, the jury separately heard evidence under Florida's recently enacted capital sentencing statute. Fla. Stat. § 921.141 (1973).[1] At the time, that statute listed eight aggravating circumstances and seven mitigating circumstances. §§ 921.141(6) and (7).[2] Although Songer informed his attorney that members of his family and friends were willing and available to testify to his general good character and normally nonviolent personality, Songer's counsel called no witnesses other than Songer and offered no other mitigating evidence for the jury to consider. The jury recommended death, and the judge imposed that sentence.

In 1980, Songer filed a motion to vacate sentence in his Florida trial court.[3] He raised his *Lockett* claim as part of a broad challenge to his trial attorney's effective assistance and to the jury instructions used at sentencing.[4] At the evidentiary hearing held

---

[1] Florida enacted this statute in 1972, following our decision in *Furman* v. *Georgia*, 408 U. S. 238 (1972).

[2] See 3 1972 Fla. Laws 20–22, ch. 72–724, § 9 (amending § 921.141, effective December 8, 1972); *State* v. *Dixon*, 283 So. 2d 1, 4–6 (Fla. 1973) (quoting statute in full as it existed prior to October 1974 amendment). The statute subsequently has been amended and its sections renumbered. See Fla. Stat. Ann. §§ 921.141(5) and (6) (West Supp. 1984).

[3] This motion was not filed until 1980 because on direct appeal this Court had vacated Songer's sentence and remanded for resentencing in light of *Gardner* v. *Florida*, 430 U. S. 349 (1977). *Songer* v. *Florida*, 430 U. S. 952 (1977). After a hearing limited to the presentation of the presentence report to Songer's attorney, the trial court reimposed Songer's death sentence and the Florida Supreme Court affirmed. See *Songer* v. *State*, 365 So. 2d 696 (Fla. 1978), cert. denied, 441 U. S. 956 (1979). In due course thereafter, Songer's motion to vacate the judgment and death sentence was filed pursuant to Florida Rule of Criminal Procedure 3.850.

[4] In his motion to vacate, Songer challenged (1) his trial counsel's failure to present "available evidence as to Defendant's passive nature . . . or to any other salient factors in Defendant's character," and (2) the "specific application of the [Florida capital sentencing] statute in this case," citing *Lockett*, because "the court instructed the jury to limit its consideration of mitigating circumstances to those" specified in the statute. Record Volume (hereinafter R.) VI, Exhibit E.

on this motion, Songer's trial counsel explained that he had not offered character or other evidence in mitigation because he had believed that only evidence relevant to the statutory mitigating circumstances was allowed:

> "The only recollection I have is that was a new statute at that time, . . . going over the statutory grounds with him for aggravating circumstances and mitigating circumstances, and what would be available to us under the statutory language and what would be against us under the statutory language. . . . [I examined] all the factors we had available to us." R. II, at 379.[5]

Without discussing whether Songer's sentencing may have violated *Lockett*, the trial court ruled that Songer's counsel had not been ineffective and denied the motion to vacate. The Florida Supreme Court affirmed, *Songer* v. *State*, 419 So. 2d 1044 (1982), also without mention of *Lockett*.[6]

After the Florida Supreme Court again denied Songer's claim without discussion when he filed a state habeas corpus petition, *Songer* v. *State*, 423 So. 2d 355 (1982), Songer filed this federal petition under 28 U. S.C § 2254. The District Court first concluded that Songer's attorney had not been ineffective at the penalty stage. 571 F. Supp. 1384, 1393–1397 (MD Fla. 1983). The court found that the attorney had examined "the possibility of using particular character witnesses during the penalty stage," and that "[h]is motivation for rejecting that [possibility] is unclear." *Id.*, at 1394. Then, based on the attorney's testimony at the motion

---

[5] Songer's counsel also testified that Songer's trial was the first case he had tried under Florida's new capital sentencing statute. R. II, at 398.

[6] The court stated that "[a]ppellant's claim that the trial court failed to properly instruct the jury on the scope of mitigating circumstances . . . has already been considered by this Court," and cited its decision rendered after Songer's sentencing remand. 419 So. 2d, at 1046 (citing 365 So. 2d, at 700). See n. 3, *supra*. The resentencing opinion, however, had addressed only the facial validity of Florida's capital sentencing statute in light of the recent *Lockett* decision. See n. 9, *infra*. At no point in that decision had the Florida Supreme Court explicitly addressed the particular facts of Songer's sentencing proceeding. See 365 So. 2d, at 700. Thus the later refusal to discuss Songer's arguments on this point was based on a premise that seems clearly erroneous. It nonetheless constitutes a decision on the merits of the claim.

to vacate hearing quoted above, the court concluded that "it is quite possible that [the attorney] may have been laboring under the *reasonable*, but mistaken, belief that he could not introduce any nonstatutory mitigating factors." *Id.*, at 1395 (emphasis added).[7] Despite this conclusion that Florida law in 1974 reasonably operated to preclude Songer's attorney from introducing relevant and available mitigating evidence, the District Court failed to make any connection with our *Lockett* and *Eddings* holdings.

A few pages later, the District Court addressed Songer's second claim: that the jury instructions concerning mitigating circumstances had violated *Lockett*. Without reference to its earlier conclusion that Songer's attorney had reasonably concluded that Florida law precluded him from introducing nonstatutory mitigating evidence, the court stated that Songer "was not prevented from proffering any evidence in mitigation." 571 F. Supp., at 1398. After discussing the scant mitigating evidence which the attorney had succeeded in eliciting from Songer's own testimony at the sentencing hearing, and noting that the Florida Supreme Court had already rejected the "identical challenge" (as if that could ever be dispositive), the District Court dismissed the claim without further comment.

On appeal, the Eleventh Circuit affirmed the District Court's factual findings. 733 F. 2d 788 (1984). These included (1) that Songer's "[c]ounsel did discuss character witnesses with the defendant, but counsel rejected their use," and (2) that the "character mitigating evidence would have been a general affirmation of good behavior as a child and young adult offered by family and friends." *Id.*, at 791, n. 2. Next, without specifically discussing the attorney's performance at sentencing, the court ruled that Songer had not adequately made out an ineffective assistance claim. The court then disposed of Songer's attack on the jury instructions concerning mitigating circumstances. See n. 14,

---

[7] Just prior to stating this conclusion, the District Court also suggested that because the attorney's motivations "do not appear from his testimony at the [motion to vacate] hearing, . . . this court may also presume . . . that counsel's decision not to call character witnesses was strategic." 571 F. Supp., at 1394–1395. This "presumption" is obviously not a factual finding. Moreover it is contradicted by the record of the attorney's testimony at the state court hearing as well as by the District Court's own conclusion quoted in the text. Finally, it is a legal presumption that this Court has never expressly approved. It thus carries no dispositive weight here.

*infra.* *Lockett* and *Eddings* were not even cited in the Court of Appeals' opinion.

## II

The plain error of the courts below is that, although they perceived some vague tension between Songer's sentencing and the principles expressed in *Lockett* and *Eddings*, they failed to consider precisely the impact of Florida law as understood and applied when Songer was sentenced in 1974. At that time, as Florida decisional law indicates, the Florida capital sentencing statute operated to preclude consideration of mitigating evidence outside the statutory categories. The District Court explained this forthrightly:

> "[A]t the time of petitioner's trial in 1974, it was by no means clear that a defense attorney should introduce mitigating character evidence during the penalty stage. 'Florida's capital sentencing statute was barely a year old at the time of appellant's trial, and the only Florida Supreme Court case addressing its constitutionality supported an interpretation of the statute as limiting the mitigating evidence that could be considered to that falling within the seven statutory factors.'"
>
> 571 F. Supp., at 1395 (quoting *Proffitt* v. *Wainwright*, 685 F. 2d 1227, 1248 (CA11 1982)).

The conclusion that it was "by no means clear" in 1974 that nonstatutory mitigating evidence was admissible under Florida's capital sentencing law is, to say the least, an understatement. The law had become effective in December 1972. In *State* v. *Dixon*, 283 So. 2d 1 (1973), the Florida Supreme Court had described the new statute as "a system whereby *the possible* aggravating and *mitigating circumstances are defined*" and only "the weighing process" is left to the jury and judge. *Id.*, at 7 (emphasis added). Thus, *Dixon* stated, the statutory list of aggravating and mitigating circumstances "*must* be determinative of the sentence imposed." *Id.*, at 8 (emphasis added). If "one or more of the prescribed aggravating factors is found, death is presumed to be the proper sentence unless it or they are overridden by one or more of the mitigating circumstances *provided in Fla. Stat. § 921.141(7)*." *Id.*, at 9 (emphasis added).[8]

---

[8] Judge Ervin's dissent in *Dixon* indicated that this interpretation of Florida's capital sentencing statute was unanimous. See 283 So. 2d, at 17.

Three years later, in *Cooper* v. *State*, 336 So. 2d 1133 (1976), the Florida Supreme Court unambiguously reaffirmed this interpretation:

> "*The sole issue* in a sentencing hearing under § 921.141 . . . is to examine in each case the *itemized* aggravating and mitigating circumstances. *Evidence concerning other matters have [sic] no place in that proceeding. . . .*" *Id.*, at 1139 (emphasis added).

*Cooper* concluded: "[T]he Legislature chose to list the mitigating circumstances which it judged to be reliable . . . , and *we are not free to expand the list.*" *Ibid.;* see also *id.*, at 1139, n. 7.

Moreover, even if the general interpretation of § 921.141 in Florida in 1974 had been the same as today—and it obviously was not[9]—that fact would be irrelevant in light of the record of this

---

[9] Not until this Court examined Florida's capital sentencing statute in *Proffitt* v. *Florida*, 428 U. S. 242 (1976), was there any suggestion that Florida's law might permit nonstatutory mitigating evidence. Without citing *Dixon*, the only Florida case on point at the time, the Court speculated in *Proffitt* that it "seems unlikely" that Florida's statute would be interpreted to bar consideration of nonstatutory mitigating evidence. 428 U. S., at 250, n. 8 (opinion of Stewart, POWELL, and STEVENS, JJ.); accord, *id.*, at 260 (opinion of WHITE, J.); see also *Lockett*, 438 U. S., at 606 ("[T]his Court assumed in *Proffitt* . . . that the range of mitigating factors listed in the [Florida] statute was not exclusive"). *Proffitt* was handed down on July 2, 1976; Florida's decision in *Cooper* was issued just six days later on July 8, 1976. It seems certain that the Florida Supreme Court was not aware of the details in *Proffitt*'s footnotes at the time. Thus each court interpreted Florida's statute in 1976 with no clear understanding of how the other contemporaneously viewed the law.

Once *Lockett* was decided in 1978, however, Florida necessarily accepted the suggestion that its statutory language was not exclusive in order to save the statute's constitutionality. Thus, when Songer raised this issue in a petition for rehearing after this Court's sentencing remand in 1978, see n. 3, *supra*, the Florida Supreme Court simply dismissed its prior language in *Cooper* as "not apropos," and claimed that "[o]bviously, our construction of Section 921.141(6) has been that all relevant circumstances may be considered in mitigation." *Songer* v. *State*, 365 So. 2d, at 700. The Florida cases cited in support of this position, however, do not "obviously" state it. Most relied expressly on the 1973 *Dixon* decision which, as shown above, suggests a contrary conclusion, and a number simply tracked the unilluminating statutory language. None stated explicitly that nonstatutory mitigating evidence would be admitted under § 921.141. More significant, however, is the fact that the *earliest* decision cited was decided in December 1975, almost two

particular case. At the penalty stage of Songer's trial, the judge informed the jury that it was to decide whether or not to impose the death penalty "based upon . . . whether sufficient mitigating circumstances exist, *as hereafter enumerated.* . . ." R. VI, at 445. The judge then stated that "[m]itigating circumstances by statute are . . . ," and read the statutory list verbatim. *Id.*, at 446. Thus Songer's jury was instructed to base its decision only on the statutory list of mitigating circumstances, as enumerated by the judge.

In addition, Songer's jury was provided a verdict form on which it could indicate its sentence. The preprinted introductory sentence on the form began with the words "We, the Jury, having heard the evidence . . . as to whether . . . sufficient mitigating circumstances *[as] defined in the Court's charge* [exist]. . . ." *Id.*, at 447–448. This form, which accompanied the jury into the jury room, could only have reinforced the jury's impression that it was limited to considering only the factors enumerated in the statute. These facts are unnecessary to Songer's central claim: that Florida law operated to preclude his attorney from introducing relevant mitigating evidence. But they do add further support to the conclusion that all the relevant actors in Songer's 1974 trial—attorney, judge and jury—were operating on the assumption that mitigating evidence in capital cases was limited to evidence relevant to the factors listed in § 921.141(7).[10] Such an assumption would be unconstitutionally erroneous today. In light of *Lockett* and *Eddings*, it must also render Songer's 1974 death sentence invalid as imposed.[11]

---

years after Songer was sentenced. The relevance of these later decisions to Songer's case, therefore, is attenuated at best.

[10] Indeed, the view that mitigating circumstances were limited to those listed in the statute was applied on direct review of Songer's conviction. Expressly relying on *Dixon,* the Florida Supreme Court examined only "the *statutorily enumerated* mitigating circumstances," and found that they were outweighed in Songer's case. *Songer* v. *State,* 322 So. 2d 481, 484 (1975) (emphasis added).

[11] Florida's statute expressly provides for resentencing in a capital case that is remanded. Section 921.141(1) states that if the original trial jury "is unable to reconvene for a hearing on the issue of penalty, . . . the trial judge may summon a special juror or jurors as provided in chapter 913 to determine the issue of the imposition of the penalty." Fla. Stat. Ann. § 921.141(1) (West Supp. 1984).

## III

The courts that have examined Songer's claims heretofore as going solely to ineffective assistance or faulty jury instructions have been misguided, primarily because they failed to recognize the independent significance of *Lockett* and *Eddings* in the area of capital sentencing.[12] A first principle apparent from those decisions is that mitigating evidence takes on constitutional significance in the Eighth Amendment context of capital sentencing. Thus the absence of such evidence, if the result of state law, can never be held "unlikely to make a difference" as the Eleventh Circuit suggested. 733 F. 2d, at 791, n. 2(h).[13]

Moreover, the courts below consistently failed to recognize that the jury instruction issue is, in this case, largely irrelevant. The point here is that Florida law in 1974 operated to lead Songer's attorney to conclude, *reasonably*, that nonstatutory mitigating evidence was precluded at sentencing. Once this decision was made, the constitutional damage was done. The jury instructions, which I believe were faulty in any case,[14] did not matter;

---

[12] Songer has squarely challenged the failure to introduce available mitigating character evidence since his original motion to vacate, citing *Lockett* throughout, see n. 4, *supra*, and the facts relevant to his claim were developed in the Florida trial court. Thus, in an even more specific sense than was the case in *Eddings*, "the question of whether the decisions below were consistent with our decision in *Lockett* is properly before us." 455 U. S., at 113–114, n. 9.

[13] See *Eddings*, 455 U. S., at 119 (O'CONNOR, J., concurring): "I disagree with the suggestion in the dissent that remanding this case may serve no useful purpose. . . . [W]e may not speculate as to whether the [sentencer] . . . considered all of the mitigating factors and found them insufficient. . . . *Woodson* [v. *North Carolina*, 428 U. S. 280 (1976)] and *Lockett* require us to remove any legitimate basis for finding ambiguity concerning the factors actually considered by the trial court."

[14] Contrary to the Court of Appeals' assumption in this case, 733 F. 2d, at 792, the instructions given to Songer's sentencing jury were significantly different from those upheld in *Ford* v. *Strickland*, 696 F. 2d 804 (CA11), cert. denied, 464 U. S. 865 (1983). In *Ford*, the jury was told to consider "only the following" aggravating factors, and to consider "the following" mitigating factors. The Eleventh Circuit found that the latter omission of the word "only" saved the instructions. 696 F. 2d, at 812. In Songer's case, however, the jury was told to base its decision on consideration of mitigating circumstances "*as hereafter enumerated*"; the judge then read the statutory list. See *supra*, at 1138–1139. Thus the significant message of limitation omitted in *Ford* was clearly communicated here.

even if properly instructed, the jury did not have before it the nonstatutory mitigating evidence that Songer had discussed with his attorney. Thus the error of constitutional significance here arose before the jury was instructed—it was, however, no less the product of state law.[15]

Florida's only counter to Songer's petition in this Court is to repeat that various courts have ruled, since *Lockett*, that the Florida statute does not impermissibly limit mitigating evidence to the factors listed in the statute. This unenlightening restatement of

---

Interestingly, Florida has omitted this significantly different portion of Songer's jury instructions from its opposition to Songer's petition for certiorari, and apparently failed to include the statement in its response to Songer's petition for habeas corpus in the District Court. See R. II, at 274–284.

The Court of Appeals also ruled that Songer had not demonstrated "cause and prejudice" for his attorney's failure to object to the sentencing jury instructions. But when the District Court found that the trial attorney's decision regarding the admissibility of nonstatutory mitigating evidence was a "reasonable" one under Florida law in 1974, it necessarily found that he had "cause" for failing to object. See *Reed* v. *Ross*, 468 U. S. 1, 14–15 (1984). As for prejudice, *Lockett* and *Eddings* require that a state-created preclusion of mitigating evidence must be held to fulfill this requirement. In any case, the Florida courts have ruled on Songer's claim without noting any failure to object. The merits are therefore properly before us. *County Court of Ulster County* v. *Allen*, 442 U. S. 140 (1979).

[15] The District Court also relied on the decision of the Court of Appeals for the Fifth Circuit in *Spinkellink* v. *Wainwright*, 578 F. 2d 582 (1978), cert. denied, 440 U. S. 976 (1979), to dismiss Songer's claim. 571 F. Supp., at 1398. But *Spinkellink* clearly indicates that Songer's sentence should be vacated. Like Songer, Spinkellink was sentenced to death in Florida soon after § 921.141 was enacted. In addressing Spinkellink's general *Lockett* challenge to his sentencing, the Fifth Circuit recognized that the post-1976 understanding of Florida's capital sentencing statute did not provide an answer to the claim. Instead, the panel conducted an independent review of the record, and found that Spinkellink "was afforded, and exercised, without limitation, every opportunity to set forth any and all mitigating factors in his favor," including a number outside the statutory list. 578 F. 2d, at 621. The record in this case is significantly different. Unlike Spinkellink, Songer was *not* afforded "every opportunity" to offer nonstatutory mitigating evidence. Instead, Songer's attorney reasonably relied on the language of the statute and the Florida Supreme Court's statements in *Dixon* effectively to deny Songer his opportunity to introduce mitigating character evidence that Songer expressly wanted the jury to consider. The effect on the outcome was the same as that in *Eddings:* "it was as if the trial judge had instructed a jury to disregard the mitigating evidence." 455 U. S., at 114.

the obvious, see n. 9, *supra*, completely fails to address the significant facts of this case: that *at the time of Songer's trial*, the reasonable and accepted understanding of § 921.141 was to the contrary, and that Songer's attorney relied on that interpretation in deciding to put on no character evidence in mitigation. The current interpretation of § 921.141 simply has no bearing on whether these facts violated constitutional principles in 1974.

## IV

Because I continue to adhere to my view that the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments, see *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), I would vote to grant the petition for certiorari and vacate Songer's sentence in any event. But even if I believed otherwise, I would vote to vacate the sentence in this case. This petition requires simply a straightforward application of *Lockett* and *Eddings* to the unusual facts of this case. Unlike other possible cases in which a pre-*Lockett* sentencing challenge might be raised, the record here plainly indicates that Songer's attorney decided that, as a matter of law, he was precluded from offering mitigating evidence outside the categories listed in § 921.141(7). Cf. *Eddings*, 455 U. S., at 113 (trial judge found "as a matter of law" that he was unable to consider certain mitigating evidence).[16] Because this accepted and reasonable interpretation of Florida law in 1974 operated to preclude Songer from presenting relevant character evidence in mitigation, it follows *a fortiori* that a *Lockett* violation occurred.[17]

---

[16] Like this case, *Eddings* involved an application of *Lockett* to a sentencing that occurred before *Lockett* was decided. See *Eddings* v. *State*, 616 P. 2d 1159, 1164 (Okla. 1980).

[17] This Court has never accepted reasonableness as a defense to constitutional error in the *Lockett* analysis of capital sentencing. Thus the Court struck down Ohio's capital sentencing statute in *Lockett* despite the recognition that the statute might have been a reasonable response to the "confusion" generated by the Court's earlier decision in *Furman* v. *Georgia*, 408 U. S. 238 (1972). See 438 U. S., at 599, and n. 7. Similarly in *Eddings*, the Court did not inquire whether the sentencing judge's erroneous legal conclusion was "reasonable"—once the constitutional *Lockett* error was found, the Court simply vacated the sentence and remanded. No less is required in this case. If Florida law in 1974 operated—by way of court ruling, reasonable legal interpretation, or any other mechanism—to deny Songer his constitutionally required opportunity to offer nonstatutory mitigating evidence, then his sentence cannot stand.

In any event, these facts raise serious questions of constitutional principle sufficient to warrant the Court's plenary review. I therefore dissent from the denial of the petition for certiorari.