811 F.2d 606
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Glen HICKS, Jr., Petitioner-Appellant,
v.
Gene SCROGGY, Warden, Respondent-Appellee.
 No. 86-5230.
 United States Court of Appeals, Sixth Circuit.
 Dec. 3, 1986.
 
 Before KRUPANSKY and RYAN, Circuit Judges, and HULL, Chief District Judge*.
 PER CURIAM.
 
 
 1
 The petitioner-appellant Glen Hicks, Jr. (Hicks) appealed from the order dismissing his petition for a writ of habeas corpus in this action commenced pursuant to 28 U.S.C. Sec. 2254. He was convicted by a jury in the Johnson County, Kentucky Circuit Court on March 11, 1982 for the September, 1981 murders of Steven Sharkey (Sharkey) and Raymond Holbrook (Holbrook), and was sentenced to two concurrent terms of life imprisonment.
 
 
 2
 In his petition for the writ, Hicks asserted that the state trial court committed constitutional errors when it: (1) denied his motion for an order requiring the state to supply funds to retain the services of expert witnesses, in violation of the Fourteenth Amendment due process and equal protection guarantees and the Sixth Amendment right to the effective assistance of counsel, and (2) denied his motion for a new trial based upon allegations of juror bias, in violation of the Sixth Amendment right to trial by a fair and impartial jury.
 
 
 3
 The record disclosed the following relevant facts. During the course of the pretrial proceedings in the Kentucky state court, Hicks, as an indigent defendant, and through his appointed counsel, moved for a court order requiring the state to provide funds to permit him to engage the "services of various expert witnesses." The motion was denied. Hicks renewed the motion at the pretrial conference, and the motion was again denied.[1]
 
 
 4
 Voir dire of the prospective jurors commenced immediately after the pretrial conference. The court conducted the initial interrogation which included questions designed to determine if any juror would be prejudiced either in favor of or against Hicks or the state and whether there was any reason that could prevent them from rendering a fair and impartial verdict. The inquiries did not elicit any affirmative responses. The court also inquired if the jury collectively or as individuals could arrive at a verdict based solely on the evidence presented at trial. This inquiry did not elicit any negative responses. Individual counsel were thereupon permitted to independently pursue the voir dire examination. Neither counsel explored the family or other relationships of the victim with members of the jury panel.
 
 
 5
 At trial, Lynne Meekus (Meekus), a serologist from the state crime laboratory, testified on behalf of the prosecution. Meekus testified that she used electrophoresis[2] to categorize Sharkey's, Holbrook's and Hicks' blood into enzyme types. She further testified that each of the three had a different enzyme pattern, and that only four people in one thousand have the same enzyme pattern as Hicks. Blood with Hicks' enzyme pattern was found on a sweatshirt near Sharkey's house and on the floors, towels, and a pair of trousers taken from Holbrook's home.
 
 
 6
 During the presentation of his case, Hicks summoned Dr. Ernest E. Musgrave (Musgrave) to the stand. Musgrave testified that he was familiar with the technique Meekus used to type the blood, that the technique was "extremely accurate," but that the statistics presented by Meekus would be affected by the racial composure and familial relationships of persons in the locality.
 
 
 7
 On May 25, 1982, after his conviction, Hicks petitioned the trial court for a new trial and in support thereof submitted the handwritten affidavits of two male jurors. The affiants alleged that during deliberations an unidentified female juror purportedly commented that she didn't belong on the jury because she knew Sharkey's mother. On June 4, 1982, the court conducted a hearing during which one of the affiants testified that he did not know the name of the juror in question, but that she had consistently voted to return a guilty verdict throughout the deliberations, and that his vote was in no way influenced by the unidentified individual's statement. Hicks made no attempt to identify the unknown juror by examining the six female jurors or by summoning Sharkey's mother.
 
 
 8
 At the conclusion of the testimony, the court was convinced that Hicks had not supported his motion for a new trial. The court afforded Hicks ten days within which to present the court with additional evidence. Hicks did not attempt to identify the female juror in question and presented no further evidence. The court thereafter denied the motion for a new trial.
 
 
 9
 Hicks appealed directly to the Kentucky Supreme Court which affirmed the convictions finding no error in either the refusal to provide funds for expert witnesses or the denial of the motion for a new trial because of juror bias. Hicks v. Commonwealth, 670 S.W.2d 837 (Ky.1984). Hicks petition for certiorari to the United States Supreme Court was denied. 105 S.Ct. 521, 83 L.Ed.2d 409.
 
 
 10
 Hicks thereupon commenced this habeas corpus action in the District Court for the Eastern District of Kentucky. Upon the magistrate's recommendation, Judge Unthank dismissed the petition concluding that no constitutional errors had been committed.
 
 
 11
 In Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court
 
 
 12
 recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.
 
 
 13
 Id., 470 U.S. at 76. Three factors are relevant to the determination of whether an indigent defendant is entitled to expert assistance at the state's expense.
 
 
 14
 The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.
 
 
 15
 Id., 470 U.S. at 77. In a criminal proceeding where the defendant's liberty is at risk, the defendant has an overwhelming interest in preventing an erroneous conviction. "At the same time, it is difficult to identify any interest of the State, other than that in its economy, that weighs against recognition of this right." Id., 470 U.S. at 79. To find that the individual's interest outweighs the government's however, does not end the inquiry. The necessity of the expert assistance sought and the risk of an erroneous conviction must also be considered.
 
 
 16
 For an indigent defendant to be constitutionally entitled to expert assistance at the government's expense, that assistance must be "reasonably necessary." United States v. One Feather, 702 F.2d 736 (8th Cir.1983). The defendant has the burden of proving his need for state funded experts. United States v. Sailer, 552 F.2d 213 (8th Cir.), cert. denied, 431 U.S. 959, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977), One Feather, 702 F.2d at 738.
 
 
 17
 The district court properly concluded that Hicks failed to support his burden of proving that his requested expert assistance was reasonably necessary. His generalized motion for funds to employ "various experts" failed to satisfy the demands of existing legal precedent. Not until the pretrial did counsel decide he needed experts to prepare for the cross examination and rebuttal of Meekus' testimony. "[U]ndeveloped assertions that the requested assistance would be beneficial ..." do not establish that such assistance is reasonably necessary, and the denial of vague requests for expert assistance does not implicate constitutional concerns. Caldwell v. Mississippi, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985). The Kentucky state trial court did not, therefore, commit a constitutional error in denying Hicks' motion for funds to engage "the services of various expert witnesses."[3]
 
 
 18
 In considering the petitioner's charges arising from asserted juror bias, this court's attention is directed to Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), wherein the Supreme Court determined that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." Id. 455 U.S. at 215. During such a hearing, the defendant must present evidence that one of the jurors was in fact biased, and "the defendant's burden of proof must be sustained not as a matter of speculation, but as a demonstrable reality." United States v. Whiting, 538 F.2d 220, 223 (8th Cir.1976).
 
 
 19
 Hicks failed to carry his burden. He merely presented the unsubstantiated affidavits of two other jurors and the oral testimony of one of those affiants. He made no attempt to identify, investigate, or interrogate the alleged partial juror or to summon the victim's mother for questioning, even after the state court allotted him ten additional days to present evidence. He did not prove that the unidentified female juror deliberately concealed information or lied during the voir dire examination. Cf. United States v. Tutt, 704 F.2d 1567, 1569 (11th Cir.) (to show that a juror lied or deliberately concealed information on voir dire, a defendant must have asked a specific question on the matter alleged to have been concealed), cert. denied, 464 U.S. 855, 104 S.Ct. 174, 78 L.Ed.2d 156 (1983). Under such circumstances, the denial of the motion for a new trial cannot be considered constitutional error.[4]
 
 
 20
 The district court's denial of habeas relief is "supported by the weight of the evidence and, thus not clearly erroneous." Charles v. Foltz, 741 F.2d 834, 836 (6th Cir.1984), cert. denied, 469 U.S. 1139, 105 S.Ct. 970, 83 L.Ed.2d 973 (1985). Accordingly, the decision of the district court is hereby AFFIRMED.
 
 
 
 *
 Hon. Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee sitting by designation
 
 
 [1]
 During the pretrial conference, Hicks also requested that the state's expert hematologist be precluded from testifying because Hicks had been denied funds to consult with expert witnesses to assist in cross examination
 
 
 [2]
 Electrophoresis is a process in which an electric current is passed through the blood separating the proteins
 
 
 [3]
 Furthermore, this is not a case where Hicks received no expert assistance. Dr. Musgrave competently testified that he was familiar with the techniques used by Meekus and that there were possible inaccuracies in the statistics she presented. Absent evidence that Musgrave's assistance was inadequate, the decision not to provide additional expert assistance was not constitutionally improper. Cf. Matlock v. Rose, 731 F.2d 1236, 1244 (6th Cir.1984), cert. denied, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985)
 
 
 [4]
 Hicks asserts that the Kentucky courts used Kentucky Rule of Criminal Procedure 10.04 to unconstitutionally prevent him from showing bias. That rule provides that "[a] juror cannot be examined to establish a ground for a new trial except to establish that the verdict was made by lot."
 Hicks argument is totally devoid of merit. The trial court ignored the rule and held a hearing during which Hicks examined a juror. The Kentucky Supreme Court, although pointing to this case as an illustration of the "wisdom" of the rule, nevertheless went on to consider the claim of bias on its merits. Hicks, 670 S.W.2d at 839.