Richard W. HOCHMAN and Harvey George, Appellants,

v.

John J. RAFFERTY, State of New Jersey and Hudson County Prosecutor.

No. 86–5025.

United States Court of Appeals, Third Circuit.

Argued March 17, 1987.

Decided Oct. 16, 1987.

Lawrence S. Lustberg (argued), Asst. Federal Public Defender, Newark, N.J., for appellants.

Jane F. Tong, Deputy Atty. Gen., Debra L. Stone (argued), Div. of Criminal Justice, Appellate Section, Trenton, N.J., for appellees.

Before HIGGINBOTHAM, MANSMANN and ROSENN, Circuit Judges.

OPINION OF THE COURT

A. LEON HIGGINBOTHAM, JR., Circuit Judge.

This appeal concerns a prosecutor's constitutional duty to present known exculpatory evidence to a grand jury. Because the prosecutor's conduct before the grand jury

that indicted appellants did not breach the requirements of the due process clause, we will affirm the district court's denial of appellants' petition for a writ of habeas corpus.

## I.

Martin Salerno was killed, by two gunshots to the head, while sitting in his van on Eastern Parkway in Jersey City, New Jersey, on July 11, 1974. Later that year, a grand jury was convened in Hudson County, New Jersey, to investigate Salerno's murder. On December 9, 1974, the grand jury considered a report of an autopsy performed upon Salerno's body and heard testimony from eight witnesses to various incidents surrounding the murder. *See* Appellants' Appendix ("App.") at 80a–182a (transcript of grand jury proceedings). The grand jury subsequently indicted one Stanley Ward for the murder of Martin Salerno.

Ward subsequently pled guilty to the crime. Thereafter, on May 3 and 13, 1977, Ward gave statements to members of the Hudson County Prosecutor's Office that implicated appellants Richard W. Hochman and Harvey George in the Salerno killing. *See* App. at 200a–24a (transcripts of Ward's statements). Ward claimed, in essence, that although he had been hired by appellants to kill Salerno and was in Salerno's van when the murder occurred, George had actually been the triggerman. A second grand jury was then convened to investigate the involvement of Hochman and George in Salerno's murder. On May 17, 1977, Ward testified before the second grand jury. *See* App. at 183a–99a (transcript of grand jury proceedings). On the basis of Ward's testimony and a coroner's report, this grand jury on June 7, 1977, filed an indictment charging Hochman and

George with seven and eight criminal counts, respectively, relating to Salerno's murder. *See* App. at 3a–6a (indictments).

Appellants each pled not guilty to the charges: Hochman on July 11, 1977, and George on September 29, 1977. Months later, on January 23, 1978, Hochman filed a pretrial motion to dismiss his indictment. This motion raised the constitutional claim that is the subject of the habeas petition now before this Court. George joined Hochman's motion at a hearing on January 30, 1978, the day their joint trial had been scheduled to begin. After hearing oral argument on this motion, New Jersey Superior Court Judge Thomas S. O'Brien refused to dismiss the indictments.

Appellants' jury trial commenced on February 1, 1978. The jury thereafter convicted each appellant of murder, of aiding and abetting the other in murder, and of conspiracy. The trial court ultimately sentenced appellants to terms of life imprisonment on their murder convictions [1]; on the conspiracy counts, each received a sentence of three to five years, to run concurrently with the life term on the murder count.[2] On direct appeal, where Hochman and George pressed the constitutional claim that is raised in this habeas petition, the murder and conspiracy convictions were summarily affirmed by New Jersey's Appellate Division. *State v. George*, No. A–3460–77 (N.J.Super.Ct.App.Div. Jan. 18, 1980) (per curiam). The Supreme Court of New Jersey subsequently denied appellants' petition for certification. *State v. George*, 84 N.J. 419, 420 A.2d 332 (1980).

■ On February 15, 1985, Hochman and George filed a petition for post-conviction relief in the Superior Court of New

---

1. For sentencing purposes, the trial court judge merged appellants' aiding and abetting convictions with their murder convictions.

2. While Hochman's direct appeal from his convictions was still pending before New Jersey's Appellate Division, he filed a federal habeas petition alleging, *inter alia*, that he should be granted bail pending appeal. The district court found that the denial of Hochman's bail request

was not arbitrary, capricious or irrational, and that Hochman had failed to exhaust his available state remedies with respect to five substantive challenges to his conviction that were raised in this petition. Accordingly, this first federal habeas petition was dismissed by the district court. United States ex rel. Hochman v. Hilton, No. 79–2707 (D.N.J. Dec. 6, 1979). No appeal was taken.

Jersey.[3] They alleged therein that their fifth amendment rights to an "informed grand jury" were violated when the prosecutor withheld exculpatory evidence. The Superior Court found these arguments to be "totally specious and so utterly lacking in merit as to strongly suggest that they were made in bad faith." *State v. Hochman*, Indictment No. 922–76, unpublished letter op. at 2 (N.J.Super.Ct. Feb. 22, 1985). It also noted that this finding was "bolstered" by its application of New Jersey Rule 3:22–5[4]; because this claim had been raised and rejected at the pretrial hearing on appellants' motion to dismiss their indictments, was rejected as "clearly without merit" on their direct appeal to the Appellate Division, and was contained in their petition for certification that was denied by the New Jersey Supreme Court, the Superior Court held that "reconsideration of this issue [wa]s clearly barred" by the rule. *Id.* We find that by this point in time, Hochman and George certainly had exhausted their available state remedies for this alleged constitutional error.[5] *See generally Gibson v. Scheidemantel*, 805 F.2d 135 (3d Cir.1986) (affirming dismissal of habeas petition where state prisoner had failed to exhaust available state remedies); *Swanger v. Zimmerman*, 750 F.2d 291, 296 n. 8 (3d Cir.1984) (federal courts "need only conclude that the claims were fairly *presented* to the state courts in order to determine that there was exhaustion of state remedies") (original emphasis); *Beaty v. Patton*, 700 F.2d 110, 112 (3d Cir.1983) (per curiam) (federal courts need not "dismiss for failure to exhaust when there is, realistically, no state remedy left for the prisoner to pursue"); *Santana v. Fenton*, 685 F.2d 71, 77 (3d Cir.1982) ("Unless it would be patently futile to do so, [state prisoners] must seek relief in state court before filing a federal habeas petition...."), *cert. denied*, 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968 (1983).

This federal habeas petition, filed on April 23, 1985,[6] was denied by the district court on November 29, 1985. The district court thereafter denied appellants' request for a certificate of probable cause, but granted them leave to proceed in forma pauperis on appeal. On May 16, 1986, we granted appellants' motion for issuance of

---

3. This was their third petition for state post-conviction relief. On June 23, 1980, before their convictions had been affirmed on direct appeal, Hochman and George filed a petition for post-conviction relief in the Superior Court. On the record before us, we can determine only that this petition raised claims of prosecutorial misconduct and ineffective assistance of counsel. App. at 24a. After the state court held hearings for a number of days, it denied the petition on August 6, 1980. Appellees' Appendix ("AA") at 1. A second state petition, filed December 23, 1982, was denied on January 10, 1983. *Id.* at 2.

4. Rule 3:22–5 provides as follows:
   Bar of Ground Expressly Adjudicated
   A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings.
   N.J.R. 3:22–5.

5. The district court found as much, Hochman v. Rafferty, No. 85–1965, slip op. at 3 (D.N.J. Nov. 29, 1985), and appellees make no argument to the contrary.

6. Hochman and George had earlier filed a federal habeas petition—Hochman's second, *see supra* note 2, George's first—claiming that they had been denied their constitutional right to effective assistance of counsel. This claim focused in the main upon counsels' failure to locate and interview witnesses to various events surrounding Salerno's murder. The district court concluded that counsel had investigated the case properly and had attempted, without success, to locate the missing witnesses. In addition, the district court noted that George's attorney, after conferring with his client, had concluded that these witnesses were not necessary to—indeed, that their testimony could well have hampered—George's defense, and that this element of the attorney's trial strategy provided no basis for George's ineffective assistance claim. Finally, the district court noted that the testimony of the missing witnesses was relevant only to the prosecution's theory, based upon Ward's testimony, that George had been the gunman who shot Salerno. Since the jury apparently rejected this theory—it acquitted Hochman and George on each count that alleged their possession of weapons—the court surmised that counsels' trial strategy of not calling these witnesses apparently was successful. Accordingly, the district court dismissed this earlier habeas petition. Hochman v. Hilton, No. 80–2859 (D.N.J. Sept. 30, 1981). No appeal was taken.

a certificate of probable cause for appeal and appointed the Office of the Federal Public Defender for the District of New Jersey to represent Hochman and George on appeal.

## II.

■ We begin our analysis by examining appellees' contention that Hochman and George are barred by their failure to comply with New Jersey's applicable procedural rules from challenging in federal court the constitutionality of their indictments. Appellees' argument refers to New Jersey Court Rule 3:10–2, which requires all objections based upon defects in a criminal indictment to be raised prior to trial.[7] The argument also refers to Rule 3:10–5, which further provides that such objections must be made within thirty days of a criminal defendant's initial plea.[8] Hochman and George concede that they did not move to dismiss their indictments, alleging that the prosecutor unconstitutionally failed to present exculpatory evidence to the grand jury that indicted them, until January 23, 1978,[9] notwithstanding their arraignments and not guilty pleas on July 11, 1977, and September 29, 1977, respectively. See Appellants' Reply Brief at 2. Appellees accordingly argue with great force that Hochman and George are now barred, by their failure to move to dismiss their indictments in a timely fashion under the applicable state procedural rules, from raising their constitutional claim now in a federal habeas petition.

In *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (*"Ulster County"*), the Supreme Court unanimously declined to find procedural default and thus proceeded to consider the merits of a due process challenge to New York's statutory presumption that the presence of a firearm in an automobile is evidence of its illegal possession by all of the automobile's occupants. The procedural default issue in *Ulster County* arose because the habeas petitioners there had raised their constitutional challenge "for the first time only after the jury had announced its verdict, and because the state courts were less than explicit in their reasons for rejecting [that challenge]...." *Id.* at 148, 99 S.Ct. at 2220. The Supreme Court was therefore compelled to decide, as a threshold matter, "whether the New York courts [acted] on the basis of an independent and adequate state procedural ground that bars the federal courts from addressing the [constitutional] issue on habeas corpus." *Id.* The Court concluded that, where "neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim." *Id.* at 154, 99 S.Ct. at 2223; *accord Wainwright v. Witt,* 469 U.S. 412, 431 n. 11, 105 S.Ct. 844 n. 11, 83 L.Ed.2d 841 (1985); *Songer v. Wainwright,* 469 U.S. 1133, 1141 n. 14, 105 S.Ct. 817, 822 n. 14, 83 L.Ed.2d 809 (1985) (Brennan, J., joined by Marshall, J., dissenting from denial of certiorari); *Connecticut v. Johnson,* 460 U.S. 73, 80 n. 8, 103 S.Ct.

---

7. Rule 3:10–2 governs
   Defenses and Objections Which Must Be Raised Before Trial[.]
   The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution or in the indictment or accusation, except as otherwise provided by R. 3:10–3 (defenses which may be raised only before or after trial) and R. 3:10–4 (lack of jurisdiction), must be raised by motion before trial. Failure to so present any such defense constitutes a waiver thereof, but the court for good cause shown may grant relief from the waiver.
   N.J.R. 3:10–2.

8. Rule 3:10–5 governs the

Time and Manner of Making Motion[.]
Except as otherwise provided, a motion made pursuant to R. 3:10 which is required or permitted to be made before trial shall be made within 30 days after the initial plea to the charge, but the court may for good cause shown enlarge the time thereafter. A motion shall include all defenses and objections then available to the defendant.
N.J.R. 3:10–5.

9. At the pretrial hearing on this motion to dismiss the indictment, Hochman's trial attorney candidly admitted that it was his "fault in delaying to bring it. I filed the motion when the idea struck me." App. at 248a.

969, 973 n. 8, 74 L.Ed.2d 823 (1983) (plurality opinion); *United States v. Frady,* 456 U.S. 152, 177, 102 S.Ct. 1584, 1599, 71 L.Ed.2d 816 (1982) (Blackmun, J., concurring in judgment) ("The Court has long recognized that the *Wainwright v. Sykes* standard need not be met where a state has declined to enforce its own contemporaneous objection rule."); *Engle v. Isaac,* 456 U.S. 107, 135 n. 44, 102 S.Ct. 1558, 1575 n. 44, 71 L.Ed.2d 783 (1982); *cf. Reed v. Ross,* 468 U.S. 1, 8 n. 5, 104 S.Ct. 2901, 2906 n. 5, 82 L.Ed.2d 1 (1984) (explicating but not addressing habeas petitioner's argument that state court adjudication had, by considering merits of due process claim, waived procedural grounds for dismissal).

In this case, none of the New Jersey courts that addressed appellants' federal constitutional claim indicated that the claim is barred by that state's procedural rules. Initially, at the pretrial hearing on appellants' belated motion to dismiss the indictments, the Superior Court denied their request without even mentioning the possibility that the motion was time-barred by state procedural rules.[10] In addition, on direct appeal, the Appellate Division found appellants' constitutional claims to be "clearly ... without merit." *George,* No. A–3460–77, slip op. at 2 (N.J.Super.Ct.App. Div. Jan. 18, 1980) (per curiam). Finally, after the New Jersey Supreme Court declined to review appellants' convictions, the Superior Court denied their petition for post-conviction relief as "utterly lacking in merit." *Hochman,* Indictment No. 922–76, unpublished letter op. at 2 (N.J.Super.Ct. Feb. 22, 1985). The Superior Court there relied explicitly upon New Jersey Court Rule 3:22–5[11], *id.,* which bars relitigation of an issue that has been the subject of "[a] prior adjudication upon the merits." N.J.R. 3:22–5. In sum, New Jersey's courts at all levels declined even to mention, much less to enforce as a bar to the litigation of this claim's merits, their proce-

dural rules limiting motions to dismiss indictments. Under the principles of *Ulster County,* we are thus not bound to enforce those procedural rules here. *Cf. United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 439–40 (3d Cir.1982) (state court's express reliance on procedural bar is not undone as a procedural default when state court also addresses merits of habeas petitioner's claim). We must instead—as New Jersey's courts did—address the merits of appellants' constitutional argument.

### III.

■ The second grand jury indicted Hochman and George on the basis of Ward's testimony and a coroner's report only. This grand jury was not told by the prosecutor that a previous grand jury already had investigated Salerno's murder and had indicted Ward for that crime. The prosecutor also failed to inform the second grand jury of Ward's guilty plea to the charge of killing Salerno, of Ward's prior criminal record, or that Ward was to receive a reduction in sentence for his testimony against Hochman and George. The eight witnesses who testified before the first grand jury, including Salerno's widow and a Jersey City police detective, were not called to testify before the second grand jury. Hochman and George have petitioned for a writ of habeas corpus on the ground that such prosecutorial conduct before the second grand jury was fundamentally unfair, violating their constitutional rights to due process and thus invalidating their indictments.

At the outset, we must note the grand jury's constitutional and practical role in our system of justice. As the Supreme Court has consistently emphasized, grand juries historically have "not [been] hampered by rigid procedural or evidential rules," *Costello v. United States,* 350 U.S.

---

**10.** Although the Superior Court did mention the amount of time that passed between the indictments and appellants' constitutional objection thereto, its comment served only to minimize the injuries Hochman and George may have incurred through that point in time. *See* App. at 277a ("whatever harmful effects were visited upon the defendants as a consequence of the events that transpired here have long since occurred"). It had nothing to do with a question of procedural default.

**11.** *See supra* note 4.

359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956); *accord United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974) (the grand jury's "operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials"), and "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act." *Costello,* 350 U.S. at 362, 76 S.Ct. at 408. The relatively unregulated nature of a grand jury proceeding stems from a practical recognition that it

> is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person. The grand jury's investigative power must be broad if its public responsibility is adequately to be discharged.

*Calandra,* 414 U.S. at 343–44, 94 S.Ct. at 618.

On the facts of this appeal, we conclude that no constitutional boundaries were breached by the prosecutor's conduct before the second grand jury. The evidence concerning Ward that was not presented to the second grand jury—his prior record, his conviction for Salerno's murder and his deal with the prosecutor—goes only to Ward's credibility, and is not clearly exculpatory as to Hochman or George. We have also determined that the same must be said about the testimony offered by the witnesses before the first grand jury: nothing in their varied and conflicting accounts is the kind of clearly exculpatory evidence that would likely have convinced the second grand jury, had it heard such testimony, not to indict Hochman or George. This

testimony did not go to the issue of their innocence; it instead bore only on the issue of who actually pulled the trigger of the gun that killed Salerno, and was not exculpatory at all in the context of this murder-for-hire scheme. Thus, while we recognize that a "prosecutor's right to exercise some discretion and selectivity in the presentation of evidence to a grand jury does not entitle him [or her] to mislead it or to engage in fundamentally unfair tactics before it," *United States v. Ciambrone,* 601 F.2d 616, 623 (2d Cir.1979),[12] we are convinced by our review and comparison of the two grand jury transcripts that such excesses did not occur in appellants' case.[13]

### VI.

For the foregoing reasons, we will affirm the district court order denying appellants' petition for a writ of habeas corpus.

---

**12.** In *Ciambrone,* or at least in the view of Judge Friendly, who dissented, the prosecutor failed to give "candid answers" to specific questions asked by the grand jurors. 601 F.2d at 627 (Friendly, J., dissenting). No comparable inquiries were made by the grand jurors who voted to indict Hochman and George.

**13.** Because we conclude that no due process violation occurred, we do not reach appellees'

contention that, under the doctrine of *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), any such violation was cured by appellants' convictions in a constitutionally proper trial. We note, however, that a proposed legislative response to *Mechanik,* H.R. 1348, is currently pending before the House Judiciary Committee's Subcommittee on Criminal Justice.